MUSCA, APPELLANT, *v.* VILLAGE OF CHAGRIN FALLS ET AL., APPELLEES.

(No. 43268—Decided December 17, 1981.)

Mr. Bruce T. Wick, for appellant.
Mr. Joseph W. Diemert, for appellees.

DAY, P.J. This is an appeal by plaintiff-appellant Molly Musca (plaintiff) from a judgment by the Cuyahoga County Common Pleas Court denying an injunction and allowing defendant-appellee Village of Chagrin Falls (defendant) to place a tax lien of $11,594.93 on her property. The lien is for unpaid water rent.

For reasons adduced below the judgment is reversed and the cause remanded for further proceedings according to law.

I

The relevant facts were stipulated by the parties.

Plaintiff owns a four-unit commercial building in the Village of Chagrin Falls (defendant). Each of the four units receives water from defendant through a

separate hydrant[1] connected to a separate water meter, each of which is owned and installed by defendant. Defendant carries each meter as a separate account for billing purposes.

In July 1974, plaintiff leased one of her four units, known as 152 Bell Street, to Vend-A-Wash Coin Laundry Co. The lease provided that the tenant would pay for all utilities. Bills, presumably, were sent to Vend-A-Wash.

In March 1976, when defendant was advised that Vend-A-Wash was selling its business, defendant made a special reading and billed Vend-A-Wash $1,579.40 for water consumed but Vend-A-Wash did not pay the bill. About the time defendant made the final water meter reading for Vend-A-Wash, John Yost purchased the laundry business at 152 Bell Street and defendant carried over Vend-A-Wash's unpaid balance on bills issued to Yost for water consumed at that address.[2] (Neither the record nor the stipulations indicate whether Yost took over the Vend-A-Wash lease, whether Yost had a new lease of his own or whether he had no lease.)

Yost did not pay the water bills. On November 2, 1978, when the unpaid balance reached $11,594.93, defendant shut off the water at 152 Bell Street and "Yost abandoned or disposed of his business."

Other than through her tenants plaintiff never received or consumed water at 152 Bell Street. At no time prior to November 2, 1978, did plaintiff open any account with defendant to furnish water at 152 Bell Street, nor did she agree to be responsible for payment for water furnished to that address. Although defendant had rented water to 152 Bell Street at least since July 15, 1974, plaintiff did not receive any bills for water prior to November 2, 1978, more than four years later.[3]

Before its incorporation as a charter municipality in November 1962, defendant operated a water department under rules, regulations and by-laws approved by the Village Board of Public Affairs. Section 13 of these rules includes a provision making unpaid "water rent" a lien on the property.[4] When defendant incorporated, it adopted a charter which included in Article XII:

---

[1] Cf. R.C. 743.04. "The director of public service may, for the purpose of paying the expenses of conducting and managing the water works of a municipal corporation, assess and collect a water rent of sufficient amount and in such manner as he deems most equitable from all tenements and premises supplied with water. *When more than one tenant or water taker is supplied with one hydrant or off the same pipe, and when the assessments therefor are not paid when due, the director shall look directly to the owner of the property for so much of the water rent as remains unpaid, which shall be collected in the same manner as other city taxes.*" (Emphasis added.) Cf. *Akron v. Citizens S&L Co.* (App. 1934), 17 Ohio Law Abs. 159.

[2] At oral argument defendant stated that the $1,579.40 bill of Vend-A-Wash was forgiven because of meter problems. The amount sought from plaintiff, defendant said, is $10,059. (But subtracting $1,579.40 from $11,594.93 leaves $10,015.53).

[3] At oral argument defendant stated that it had changed its procedures to prevent occurrences such as the problem at bar. Defendant also admitted that its usual procedure is to bill water customers monthly and to shut off water of users three months in arrears. When asked about the delay of more than four years before notifying plaintiff (from 7/74 to 11/78) defendant responded merely that it is only seeking water rent for two years, from 3/76 to 11/78, see fn. 1.

[4] "Water rent shall be a lien on the property supplied, and if not paid as herein provided the same shall be collected as other taxes and assessments are collected, and the Clerk of said Board is hereby directed to certify to the Auditor of Cuyahoga County [or Geauga County] such delinquent water rents with a description of the premises, and the Auditor shall

"Section 4. Effect of Charter on Existing Laws and Rights

"The adoption of this Charter shall not affect any pre-existing rights of the municipality, nor any right or liability or pending suit or prosecution, either on behalf of or against the municipality or any officer thereof, nor any franchise granted by the municipality, nor pending proceedings for the authorization of public improvements or the levy of assessments therefor. Except as a contrary intent appears herein, all acts of the Council of the municipality shall continue in effect until lawfully amended or repealed."

The trial court, basing its decision on the stipulated facts and briefs of the parties journalized a judgment entry on October 8, 1980, in which it found:

"Judgment For the Plaintiff

"Defendant injoined [*sic*] From certifying Resol. 1980-17 to County Auditor for collection of water bill as part of Tax Bill on Plaintiff property bearing Permanent parcel No. 932-8-28."

Thirteen days later, without notice, motion, or any hearing of record the court reversed itself in an entry journalized October 21:

"The ruling of the Court granting injunctive relief to plaintiff is vacated. Plaintiff's request for injunctive relief is denied.. Defendant Village of Chagrin Falls may place a tax lien on the subject property pursuant to Section 8.07 of its Water Department Regulations."

Plaintiff then moved for a new trial but the motion was denied November 20, 1980, with a judgment entry:

"Plaintiff's motion for new trial is denied. The judgment entry of 10-8-80 was erroneous and, pursuant to Civil Rule 60(A), the entry was vacated and a corrected entry was made on 10-20-80."

From the judgment entries of October 21 and November 20, plaintiff appealed.

_____
place the same on the duplicate and collect according to law."

But her presentation is confusing. She first assigns errors and then identifies issues which deviate in some measure from the assignments. To avoid the hazards of an attempted matching, the issues are treated as the "assignments of error":

"A. Whether a trial court may arbitrarily reverse its own final judgment order—

"— without giving its reasons;

"— without complying with the provisions of Civil Rule 59 and 60; and

"— without allowing the prevailing party to be heard in defense of the judgment.

"B. Whether the trial court's original judgment or final order of 8 October 1980 was a 'clerical mistake,' as is now claimed, within the meaning of Civil Rule 60 (A).

"C. Whether the trial court's actions comport with the due process of law.

"D. Whether the lien against plaintiff's property, in favor of the Village of Chagrin Falls, is a valid lien, not being authorized by any statute.

"C. [*sic*]

"(1). The Statute of Frauds binds the state, as well as private parties.

"(2). Plaintiff never agreed to be responsible for her tenant's water bills."

II

The first three "assignments of error" are interrelated and will be considered together.

Although the court relies on Civ. R. 60(A) to support its *sua sponte* change of decision, it is apparent that the change — a complete turnabout — was so fundamental that reference to Civ. R. 60(A) is misplaced. While Rule 60(B) is the obvious rule of choice when a *party* is instituting procedures for vacating judgment, that rule specifically requires a motion to activate it — and none was filed. But, having had before it all the

arguments of the parties[5] the court would not have been precluded from a reversing of its position based on Civ. R. 59(D).

Civ. R. 59(D) provides:

"(D) On initiative of court. Not later than fourteen days after entry of judgment the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party.

"The court may also grant a motion for a new trial, timely served by a party, for a reason not stated in the party's motion. In such case the court shall give the parties notice and an opportunity to be heard on the matter. The court shall specify the grounds for new trial in the order."

Each paragraph in (D) provides a trial judge *sua sponte* authority to grant a new trial but it is not clear that the procedures for notice and hearing and the specification of grounds provided in the second paragraph also apply to the first. However, there appears to be no reason why the draftsmen should intend a procedural difference when *sua sponte* authority is exercised under the first rather than the second provision. On the other hand there are obvious reasons for intending notice and hearing for both.

The ambiguity is resolved if Civ. R. 59(D) is read as though the last two sentences of the second paragraph were part of a third paragraph providing:

"In such case[s][6] the court shall give the parties notice and an opportunity to be heard on the matter. The court shall specify the grounds for [the] new trial."

*Sua sponte* action under the rule thus read necessitates notice to the parties, an opportunity to be heard and specification of grounds whether the trial judge is presumed to have acted under either the first or the second paragraph. Since neither notice, nor opportunity to be heard, nor the required specification was provided, the plaintiff was denied the process ordained by the rule.

"Assignments of Error" (*i.e.,* issues) A, B, and C treated as affirmative claims of error are well taken.

### III

Plaintiff argues that the Statute of Frauds prevents defendant from imposing a lien against her property. Because that issue was not raised at the trial level it need not, but may be, addressed by the court of appeals, App. R. 12(A). Disposition is easy.

Statute of Frauds principles do not apply because there is no claim that the obligation asserted in this case rests on contract.[7] Rather the lien is alleged to attach by operation of law. The key issue is whether this is a valid premise. The second of the two issues marked "C," treated as an affirmative claim of error, is without merit.

### IV

Ohio law requires statutory or ordinal authority for the creation of liens on real property to enforce the collection of bills for services to such property by municipally-operated utilities, *Home Owners' Loan Corp.* v. *Tyson* (1938), 133 Ohio St. 184, 186 [10 O.O.3d 245] (statute); see *Hohly* v. *State, ex rel. Summit Superior Co.* (1934), 128 Ohio St. 257.[8]

---

[5] In the instant case "trial" consisted of submission of stipulations and briefs for the court's consideration.

[6] The "s" is added. To effect the resolution of the ambiguity all that needs to be done is to pluralize the word "case."

[7] This conclusion disposes of the second "C" assignment of error (see issues treated as assignments of error in I, *supra*). Why the plaintiff chose to have two "issues" labelled "C" is not apparent.

[8] *Id.* In *Hohly* it is implied that the lien attaches if supported by statute or ordinance. The court of appeals holding of no lien was affirmed for the reason that:

*Tyson*[9] was interpreting G.C. 4361 predecessor to and, in all material respects, identical to R.C. 735.29. The relevant statutory provisions are exemplified in this excerpt:

R.C. 735.29. General powers and duties.

"The board of trustees of public affairs appointed under section 735.28 of the Revised Code shall manage, conduct, and control the water works, electric light plants, artificial or natural gas plants, or other similar public utilities, furnish supplies of water, electricity, or gas, collect all water, electric, and gas rents, and appoint necessary officers, employees, and agents.

*"The board may make such bylaws and regulations as it deems necessary for the safe, economical, and efficient management and protection of such works, plants, and public utilities. Such bylaws and regulations, when not repugnant to municipal ordinances or to the constitution or laws of this state, shall have the same validity as ordinances.*

"For the purpose of paying the expenses of conducting and managing such water works, plants, and public utilities or of making necessary additions thereto and extensions and repairs thereon, the board may assess a water, light, power, gas, or utility rent, of sufficient amount, and in such manner as it deems most equitable, upon all tenements and premises supplied therewith. *When such rents are not paid the board may certify them to the county auditor to be placed on the duplicate and collected as other village taxes, or it may collect them by actions at law in the name of the village."* (Emphasis added.)

The Village Board of Public Affairs for Chagrin Falls came into being pursuant to G.C. 4357 predecessor of equivalent provisions in R.C. 735.28. The board's regulations for the water department of the village acquired and retained the status of ordinances by virtue of G.C. 4361 and its successor R.C. 735.29. The regulations thus established rights for the village which were perpetuated by the Charter in Section 4, Article XII, with these words: "The adoption of this Charter shall not affect any pre-existing rights of the municipality, * * * [and] [e]xcept as a contrary intent appears herein, all acts of the Council of the municipality shall continue in effect until lawfully amended or repealed."[10] In particular, the regulations provided for "a lien on the property supplied," for the collection of water rents "as other taxes and assessments are collected" and for certifying the rents to the county auditor for placement on the tax duplicate.[11]

The regulation uses the term "lien." While the statutes do not use that precise term, that fact is not material to the disposition of the principal issue here. For the *Tyson* decision indicates that unpaid water rents have lien status when the statutory procedures[12] necessary to create the lien have been satisfied.[13]

---

"[N]either Sections 3957 and 3958, General Code, nor Sections 41 and 1415 of the Code of 1919 of the city of Toledo, Ohio, create nor authorize the creation of a lien upon real property for charges for water supplied by such city to the premises of defendant in error."

[9] *Tyson, supra,* at pages 187, 189-191.

[10] In all ways relevant here R.C. 735.28 was in effect at least as early as its amendment effective September 28, 1961; R.C. 735.29 became effective on October 1, 1953; and the Charter of Chagrin Falls on November 6, 1962.

[11] The regulation approved by the village board is set out in fn. 4, *supra.*

[12] G.C. 4361 predecessor to R.C. 735.29.

[13] Although the lien issue as determined in *Tyson* has a direct dispositive effect on the issues in the present case, *Tyson* and this case do not involve the same consequences. At issue in *Tyson* was whether the proper procedure was followed to create a lien. Concluding it was not, the *Tyson* court found priority for a mortgage lien, *id.* 191.

There is no contention here that any procedural defect mars the effectiveness of the liens based upon the unpaid water bills. Accordingly, the only question remaining is whether liens for the admittedly unpaid water rents could attach as a matter of law pursuant to the regulation. It is concluded that they could and did.

Assignment of Error D, treated as an affirmative claim of error, is without merit.

### V

The principal legal issue in this case is decided against the plaintiff. However, the procedural flaws are so substantial that a remand is required to satisfy process. The plaintiff must be given the opportunity to make her case, if any, against the application of the principles of substantive law set out in Sections III and IV.

### VI

The judgment is reversed for procedural errors and the cause remanded for further proceedings in accord with this opinion.

*Judgment reversed
and cause remanded.*

CORRIGAN and MCMONAGLE, JJ., concur.

MCMONAGLE, J., retired, of the Court of Common Pleas of Cuyahoga County, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.