Based on the foregoing, we find that a causal connection existed between the decedent's injury and his employment, and we conclude that the injury arose out of his employment. Accordingly, the second element has been satisfied.

Considering the specific facts of the present case, decedent's injury is compensable under either the *Griffin* analysis, which the trial court applied, or the *Fisher* analysis applied herein as the facts of the instant case are much stronger than those in *Fisher* and those in a multitude of other cases too numerous to cite which awarded benefits.

For the foregoing reasons, appellant's assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., and FORD, J., concur.

---

**The STATE of Ohio, Appellee,**

**v.**

**GLADDING, Appellant.**

[Cite as *State v. Gladding* (1991), 72 Ohio App.3d 16.]

Court of Appeals of Ohio,
Lake County.

No. 89–L–14–094.

Decided Jan. 2, 1991.

18

*Steven C. LaTourette,* Prosecuting Attorney, and *Mike Murray,* Assistant Prosecuting Attorney, for appellee.

*Charles F. Cichocki,* for appellant.

*Per Curiam.*

Appellant Jack A. Gladding was indicted on May 8, 1979, on two counts of attempted murder and one count of aggravated arson. On January 3, 1980, appellant was found not guilty by reason of insanity. He was committed to Lima Hospital where he remained until September 1, 1981, at which time he was transferred to the Dayton Forensic Hospital. Four subsequent requests to transfer appellant to a less secure civil hospital were denied. On December 19, 1984, appellant was finally transferred to the Toledo Mental Health Center. Appellant was eventually granted a conditional release from that facility on January 31, 1986.

Under the conditional release program, appellant was required to continue outpatient therapy and report to the Toledo Center once a week. After approximately two months, appellant stopped reporting and left the state. He was apprehended in Florida and returned to Ohio.

Following a hearing, appellant was found to have violated the terms of his conditional release and was ordered to commitment at the Dayton Mental Health Center. On appeal, this court determined that the question of commitment at a more restrictive facility had not been properly before the trial court. The matter was remanded to the trial court. *State v. Gladding* (Jan. 20, 1989), Lake App. No. 12–209, unreported, 1989 WL 4277.

Appellant was transferred back to the Toledo Mental Health Center.

On February 17, 1989, appellant requested a hearing on his continued commitment. On March 14, 1989, the state of Ohio filed a motion to have the commitment hearing continued and a motion to have appellant psychiatrically examined. The trial court granted appellee's request to have appellant examined.

On April 27, 1989, the state made an application for appellant's continued commitment. An oral hearing was conducted on May 10, 1989. On May 25, 1989, the trial court ordered that appellant be transferred to the Dayton Mental Health Center, a maximum security facility. From that decision, appellant timely filed a notice of appeal.

Appellant has raised the following assignments of error:

"1. The trial court erred in ordering that appellant be rehospitalized under maximum security at the Dayton Mental Health Center.

"2. The trial court erred in ordering appellant to undergo an additional psychiatric examination to supplement those of the treating facilities and the court's own forensic psychiatric clinic.

20

"3. The trial court erred in not admitting into evidence reports reflecting appellant's diagnosis, prognosis, past treatment and recommendations regarding future treatment compiled by the treating facilities.

"4. The trial court erred in ordering an exclusion of witnesses."

■ In his first assignment of error, appellant contends that the trial court erred in ordering him to be hospitalized under maximum security at the Dayton Mental Health Center. He had been confined to the less secure Toledo Mental Health Center. Appellant claims that transferring him to a more secure facility was not an option available to the trial court because it was not requested by either party, nor was the issue raised in accordance with R.C. 2945.40.

R.C. 2945.40(E) provides, in pertinent part:

"A person committed under this section is entitled to all hearings on continued commitment applicable to him under * * * division (H) of section 5122.15 * * *."

R.C. 5122.15(H) sets forth the manner in which a continued commitment may be sought, or how a person involuntarily committed may attempt to have that commitment terminated. It provides, in pertinent part:

"If, at the end of the first ninety-day period or any subsequent period of continued commitment, there has been no disposition of the case, either by discharge or voluntary admission, the hospital, facility, board, agency, or person shall discharge the patient immediately, unless at least ten days before the expiration of the period the designee of the attorney general, the attorney the board designates, or the prosecutor files with the court an application for continued commitment. The application of such attorney or the prosecutor shall include a written report containing the diagnosis, prognosis, past treatment, a list of alternative treatment settings and plans, and identification of the treatment setting that is the least restrictive consistent with treatment needs. * * *

" * * *

"If the court, after a hearing for continued commitment finds clear and convincing evidence that the respondent is a mentally ill person subject to hospitalization by court order, the court may order continued commitment at places specified in division (C) of this section."

R.C. 5122.15(C) permits the court to commit the person for treatment to:

"(1) A hospital operated by the department of mental health if the respondent is committed pursuant to division (D) of section 2945.38 or section 2945.40, 5120.17, 5139.08 of the Revised Code;

"(2) A nonpublic hospital;

"(3) The veterans' administration or other agency of the United States government;

"(4) A board of alcohol, drug addiction, and mental health services or agency the board designates;

"(5) Receive private psychiatric or psychological care and treatment; or

"(6) Any other suitable facility or person consistent with the diagnosis, prognosis, and treatment needs of the respondent."

Additionally, in determining where to commit the person, R.C. 5122.15(E) mandates that the court " * * * consider the diagnosis, prognosis, preferences of the respondent, and projected treatment plan for the respondent and order the implementation of the least restrictive alternative available and consistent with treatment goals and, in the case of a person found not guilty by reason of insanity, with public safety."

In the present case, the question of appellant's continued commitment was properly brought before the trial court pursuant to R.C. 5122.15(H). Thus, the court had the discretion to commit appellant to any of the places specified in R.C. 5122.15(C), and, as long as it followed the directives of R.C. 5122.15(E), its decision will not be disturbed on appeal. Committing appellant to a more secure facility was an alternative available to the trial court based on the aforementioned Ohio Revised Code sections.

█ Next, appellant contends that the judgment of the trial court in finding him to be mentally ill subject to hospitalization is against the manifest weight of the evidence.

"Mental illness" is defined in R.C. 5122.01(A), which states:

" 'Mental illness' means a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life."

R.C. 5122.01(B) defines a "mentally ill person subject to hospitalization by court order" to include:

" * * * a mentally ill person who, because of his illness:

" * * *

"(2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, *or other evidence of present dangerousness* * * *." (Emphasis added.)

In the instant cause, the state presented the testimony of Dr. Kathleen Quinn, a forensic psychiatrist who had examined appellant for approximately three and one-half hours seven weeks before the hearing. It was her opinion that appellant was a mentally ill person subject to court-ordered hospitalization. She noted that appellant revealed to her the fact that he had concealed suicidal and homicidal thoughts from his treating physicians. He indicated to Dr. Quinn that he had considered killing his parents, the judge, and himself. Appellant himself testified that he would kill his parents if it were not for the fear of being further locked up.

Three other expert witnesses testified at the hearing regarding appellant's mental well-being. Each had treated appellant at one time or another during the preceding ten years. Two of the physicians believed that appellant was not mentally ill, and the third believed that appellant was probably mentally ill but not subject to hospitalization. All three of these doctors expressed concern, however, over appellant's suicidal and homicidal thoughts.

It is well settled in Ohio that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

In the case *sub judice,* although there was conflicting testimony, there was ample evidence to support the trial court's determination that appellant was mentally ill subject to hospitalization as that term is defined in R.C. 5122.-01(B)(2). Perhaps the most damaging testimony against appellant was Dr. Quinn's statement that appellant admitted to purposely concealing his suicidal and homicidal thoughts from the other doctors who testified. It was these thoughts that constituted "other evidence of present dangerousness."

 Finally, appellant argues that there was no evidence presented that identified or recommended Dayton Mental Health Center as the least restrictive treatment setting as mandated by R.C. 5122.15(E).

As discussed previously, the question of the proper treatment facility was properly before the trial court. R.C. 5122.15(C) allows a court much latitude in choosing an appropriate facility. The parties have a duty to present relevant, competent evidence to aid the court in choosing a treatment facility. *State v. Johnson* (1987), 32 Ohio St.3d 109, 112, 512 N.E.2d 652, 656. Once the trial court has considered the evidence, it must order the implementation of the least restrictive alternative available as set forth in R.C. 5122.15(E).

There is no requirement that the trial court follow the recommendation of the state or the defendant, and the court has the discretion to choose an appropriate facility. There was evidence presented in the present case that

appellant was not receiving treatment at the Toledo Mental Health Center, and that there were ample opportunities for escape. There was sufficient evidence to support the trial court's conclusion that Dayton Mental Health Center was the least restrictive alternative available in light of appellant's present dangerousness.

For the foregoing reasons, appellant's first assignment of error is without merit.

■ In the second assignment of error, appellant asserts that the trial court erred in ordering him to undergo an additional psychiatric examination.

On March 14, 1989, the state filed a motion for court-appointed psychiatric examination and evaluation of defendant. The trial court granted the state's motion on March 20, 1989. A review of the trial docket indicates that this psychiatric examination was the only one ordered by the trial court between the time that appellant requested the hearing and the date of the actual hearing.

R.C. 5122.15(A)(15) provides:

"To the extent not inconsistent with this chapter, the Rules of Civil Procedure are applicable."

Civ.R. 35(A) provides, in pertinent part:

"When the mental * * * condition * * * of a party * * * is in controversy, the court in which the action is pending may order the party to submit himself to a * * * mental examination * * *. The order may be made only on motion for good cause shown * * *."

Therefore, the trial court had the authority to order appellant to undergo the mental examination in question.

Appellant's second assignment of error is overruled.

■ In the third assignment of error, appellant claims the trial court erred in not admitting into evidence Defendant's Exhibits "B" and "C," which were reports reflecting appellant's diagnosis, prognosis, past treatment, and recommendations regarding future treatment compiled by the treating facilities. Appellant contends that they should have been admitted pursuant to either Evid.R. 803(6) or Evid.R. 803(8).

The reports were prepared by doctors at the Dayton Mental Health Center, but the doctors themselves were not present at the hearing and did not testify. Appellant attempted to authenticate the records by Dr. J. William McIntosh, a staff psychologist at the Dayton facility.

Evid.R. 803(6), however, requires that records kept in the ordinary course of business be authenticated by the records custodian or other qualified witness.

There was no evidence that Dr. McIntosh was the records custodian or that he supervised the making of the reports. Additionally, the decision whether to admit a business record under Evid.R. 803(6) is within the sound discretion of the trial court and will not be disturbed on appeal absent a clear showing of abuse of discretion. *National City Bank v. Fleming* (1981), 2 Ohio App.3d 50, 2 OBR 57, 440 N.E.2d 590. Appellant has failed to show an abuse of discretion by the trial court in not admitting Defendant's Exhibits "B" and "C." Even if these exhibits had been properly documented, there was no prejudice to the defendant in their exclusion. The evidence contained in these exhibits was identical in substance to the evidence offered by Dr. McIntosh at the hearing, and was therefore cumulative in nature. See Evid.R. 403(B).

■ Appellant also argues that these exhibits were admissible under the public records exception set forth in Evid.R. 803(8), which excludes the following from the hearsay rule:

"Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness."

Dr. McIntosh testified that the reports contained in the exhibits were not prepared pursuant to any duty imposed by law, and are therefore not admissible under the public records exception to the hearsay rule.

Appellant's third assignment of error is not well taken.

■ In the fourth assignment of error, appellant asserts that the trial court erred in ordering an exclusion of witnesses. At the beginning of the hearing, the trial court granted the state's motion to separate witnesses during the hearing. Appellant claims that his medical experts should have been allowed to remain in the courtroom so that they could hear the testimony of Dr. Quinn.

Evid.R. 615 provides:

"At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause."

In *Oakwood v. Makar* (1983), 11 Ohio App.3d 46, 11 OBR 79, 463 N.E.2d 61, the Court of Appeals for Cuyahoga County held that the separation of expert witnesses is a matter within the discretion of the trial court. *Id.* at 48, 11 OBR at 81, 463 N.E.2d at 65. In the present case, appellant has failed to show an abuse of discretion.

Appellant's fourth assignment of error is overruled.

*Judgment affirmed.*

BAIRD, P.J., BROGAN and HOFSTETTER, JJ., concur.

WILLIAM R. BAIRD, J., of the Ninth Appellate District, JAMES A. BROGAN, J., of the Second Appellate District, and EDWIN T. HOFSTETTER, J., retired, of the Eleventh Appellate District, sitting by assignment.