The STATE of Ohio, Appellee,

v.

KINMAN, Appellant.

[Cite as *State v. Kinman* (1996), 109 Ohio App.3d 95.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950043.

Decided Jan. 31, 1996.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *L. Susan Laker,* Assistant Prosecuting Attorney, for appellee.

*Jerry R. Jung,* for appellant.

---

*Per Curiam.*

In 1979, defendant-appellant, Benjamin Kinman, was found not guilty by reason of insanity of two counts of aggravated murder and one count of attempted murder. He was found to be mentally ill and subject to hospitalization by court order. Eventually, he was transferred to the Pauline Warfield Lewis Center.

On August 30, 1994, the trial court held a hearing on appellant's continued commitment and on a request by the Lewis Center for appellant to receive passes to leave the center with his mother and sister. The court concluded that the Lewis Center was the least restrictive facility available consistent with public safety but denied the center's request for off-premises passes.

In September 1994, the court received a letter from Lynn Whitaker, a psychiatric nurse who formerly worked at the Lewis Center. She indicated that she had received a letter from appellant, that appellant had threatened her when she worked at the Lewis Center and that she still felt threatened by him. Based on this information, the court set the matter for a hearing on the possible transfer of appellant to the Forensic Division of the Dayton Mental Health Center, a higher security institution.

The Lewis Center filed a motion to terminate the proceedings to transfer appellant. Following two hearings, the trial court held that it had continuing jurisdiction over the transfer issue and that Dayton Mental Health Center is the least restrictive setting available for appellant consistent with public safety. Appellant filed a timely appeal from that decision.

Appellant presents two assignments of error for review which we will address in reverse order. In his second assignment of error, appellant states that the trial court erred by conducting a hearing on its own motion to transfer him to a more restrictive setting. He argues that the trial court was without jurisdiction to conduct that hearing because R.C. 5122.20 does not allow the transfer of an involuntary patient except upon a motion filed by the chief clinical officer of a treatment facility. He further argues that Civ.R. 60(B) does not permit the court on its own motion to rehear previous issues except to correct clerical mistakes. We find this assignment of error is not well taken.

■ R.C. 2945.40 provides that if a person is found not guilty by reason of insanity, the trial court shall conduct a full hearing to determine whether he or she is a mentally ill person subject to hospitalization by court order. The hearing is to be conducted in accordance with R.C. 5122.15, which sets out the procedures for hearings regarding the involuntary commitment of the mentally ill. *Townsend v. McAvoy* (1984), 12 Ohio St.3d 314, 315, 12 OBR 385, 386, 466 N.E.2d 555, 556. Once committed, an involuntary patient is entitled to further hearings at specified times on the issue of his or her continued commitment. *State v. Lampley* (July 10, 1995), Butler App. No. CA94–10–189, unreported, 1995 WL 399428.

The Ohio Supreme Court has held that the trial court has jurisdiction to decide questions relating to the continued commitment of a person found not guilty by reason of insanity, which continues until that person is lawfully discharged. *Townsend, supra,* at syllabus. "R.C. 2945.40 and 5122.15 are replete with provisions, applicable only to those acquitted because of insanity, which ensure that extensive control will continue to be exercised over the individual by the trial court wherein he was acquitted and found to be mentally ill." *Id.,* 12 Ohio St.3d at 316, 12 OBR at 387, 466 N.E.2d at 557. The legislature "intended to equip a trial court with extensive authority to control the nature and disposition of an insanity acquittee's commitment." *State v. Lanzy* (1991), 58 Ohio St.3d 154, 158, 569 N.E.2d 468, 471.

Appellant relies upon R.C. 5122.20, which deals with the transfer of involuntary patients. It provides that before an involuntary patient may be transferred to a more restrictive setting, the chief clinical officer of a treatment facility must file an application with the trial court to amend its order of placement and a hearing must be held. Appellant argues that pursuant to this statute, only the chief clinical officer may initiate the transfer of involuntary patients. We disagree.

The statutory scheme contains no indication that the legislature intended to restrict the initiation of transfer proceedings to the officers and directors of mental health facilities. However, even if we were to conclude that the trial court erred in raising the issue *sua sponte,* we cannot hold that it was deprived of jurisdiction given the extensive authority the trial court exercises over insanity acquittees. See *Townsend, supra* (trial court did not lose jurisdiction even though the state failed to timely file an application for continued commitment); *State v. Gladding* (1991), 72 Ohio App.3d 16, 593 N.E.2d 415 (trial court could order defendant to be placed in a more secure facility even though it was not raised by the parties when the question of continued commitment was properly before the court and the court held a hearing pursuant to R.C. 5122.15); *Lampley, supra* (trial court did not lose jurisdiction over an insanity acquitee even though it failed to hold a hearing as required by R.C. 5122.15[H] ); *State v.*

*Shook* (Sept. 17, 1992), Jackson App. No. 672, unreported, 1992 WL 238902 (failure of the court to follow provisions of R.C. 5122.15 may in some cases be a denial of due process but not a jurisdictional defect).

Additionally, we do not find appellant's argument based on Civ.R. 60(B) to be persuasive. Appellant is correct in his assertion that the trial court could not raise the issue *sua sponte* under Civ.R. 60(B). *Dahl v. Kelling* (1986), 34 Ohio App.3d 258, 259, 518 N.E.2d 582, 583; *Musca v. Chagrin Falls* (1981), 3 Ohio App.3d 192, 194–195, 3 OBR 219, 221–222, 444 N.E.2d 475, 478. However, Civ.R. 60(B) is a procedural mechanism that should be reserved for relief when there is no substantive remedy for the review of judgments. *Crouser v. Crouser* (1988), 39 Ohio St.3d 177, 181, 529 N.E.2d 1251, 1254.

R.C. 5122.25 provides:

"Upon the request of a hospital, person, board, agency, or facility who has custody of a patient hospitalized pursuant to section 5122.15 of the Revised Code, or *on the order of the court,* such patient may be called for a rehearing at such place within the county of his residence or the county where such patient is hospitalized as the court designates. The hearing shall be conducted pursuant to section 5122.15 of the Revised Code." (Emphasis added.)

This statute provides substantive authority for the trial court to raise the issue of continued commitment for rehearing. The legislature's expressed intent cannot be abridged by Civ.R. 60(B). *Crouser, supra,* 39 Ohio St.3d at 178–179, 529 N.E.2d at 1252. Therefore, appellant's second assignment of error is overruled.

In his first assignment of error, appellant states that the trial court erred in ordering that appellant be transferred from the Lewis Center to the Dayton Mental Health Center. He argues that the transfer is against the manifest weight of the evidence. We find this assignment of error is not well taken.

In ordering the commitment of an individual found to be mentally ill subject to hospitalization by court order, the court "shall order the implementation of the least restrictive commitment alternative available consistent with the public safety and the welfare of the person." R.C. 2945.40(D)(1). See, also, R.C. 5122.15(E). The state bears the burden to prove by clear and convincing evidence which commitment alternative is the least restrictive at the initial determination of whether an insanity acquittee should be involuntarily committed. *State v. Johnson* (1987), 32 Ohio St.3d 109, 110–111, 512 N.E.2d 652, 654–655. Clear and convincing evidence is that which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368, 18 OBR 419, 425, 481 N.E.2d 613, 620.

■ The determination whether the transfer of an insanity acquittee is warranted lies within the trial court's discretion. *Lanzy, supra,* at syllabus. The parties both assert that the state bears the burden to prove by clear and convincing evidence that an insanity acquittee who has already been committed should be transferred to a more restrictive setting. However, we are not entirely sure of the proper standard given the Ohio Supreme Court's decision in *Johnson, supra.* In that case, the court held that no party has the burden of proof where the sole determination to be made is whether an insanity acquittee, already established as being a mentally ill person subject to hospitalization by court order, should be transferred to a less restrictive treatment setting. Instead, the parties have a duty to present relevant, competent evidence to aid the court in its determination of whether the proposed less restrictive commitment alternative is appropriate considering the treatment needs of the person and the safety of the public. *Id.,* 32 Ohio St.3d at 111–112, 512 N.E.2d at 655–656.

*Johnson* specifically calls into question the validity of *State v. Bruton* (1985), 27 Ohio App.3d 362, 27 OBR 457, 501 N.E.2d 651, on which the state relies for its assertion that it bears the burden of proof by clear and convincing evidence. *Johnson, supra,* at 109, 512 N.E.2d at 653. Nevertheless, we need not reach the issue of whether *Johnson* applies in the present case because we conclude that the state proved by clear and convincing evidence that public safety requires that appellant be transferred to a more secure treatment setting.

Appellant was found not guilty by reason of insanity for two brutal murders and an attempted murder, all involving separate victims. Reports on appellant's treatment over a fifteen-year period showed that he continued to be dangerous.

Whitaker testified that in 1989, while she was employed at the Lewis Center, appellant refused to take his medication; his condition worsened and he became increasingly belligerent and irrational. Eventually, when the trial court denied appellant certain privileges, he broke a window and jumped out, injuring himself. Appellant called Whitaker from the hospital and told her that "I've butchered in the past, and I can butcher in the future." He threatened to kill her and others at the Lewis Center.

Subsequently, Whitaker left her employment at the Lewis Center and began working at the Hamilton County Justice Center, where she saw appellant three times. She received the letter from him in September 1994. The letter indicates a substantial disorder of thought and shows a preoccupation with religion, a symptom exhibited by appellant during previous episodes of dangerous behavior. Based upon her experience with appellant, Whitaker interpreted the letter as being a personal threat. Based upon her training and experience as a psychiatric nurse, she concluded that appellant was a threat to her personally and to the community.

Appellant argues that there was no evidence that Dayton Mental Health Center was a more secure facility than the Lewis Center. However, appellant's treating psychiatrist acknowledged that Dayton "has a higher security facility in terms of preventing AWOL." Further, while the evidence showed that appellant himself had never left the grounds, several patients had simply walked away from the Lewis Center in the month prior to the second hearing.

Appellant is really arguing that the evidence favorable to him, particularly the opinion of his treating psychiatrist, is more credible. However, it is well settled that matters as to the credibility of evidence are for the trier of fact to decide. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Further, the trial court has an independent role in the process of determining the appropriate treatment for an insanity acquittee; it is not required to accept the treating physician's opinion without question and without considering other evidence. *State v. Swiger* (June 6, 1995), Tuscarawas App. No. 94 AP100073, unreported, 1995 WL 495393.

Considering the totality of circumstances, we find that the evidence was sufficient to create in the mind of the trier of fact a firm belief that public safety required appellant to be placed a more secure facility. See *In re Burton* (1984), 11 Ohio St.3d 147, 11 OBR 465, 464 N.E.2d 530; *Lampley, supra.* Consequently, the trial court did not abuse its discretion in ordering the transfer, see *State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster* (1986), 22 Ohio St.3d 191, 193, 22 OBR 275, 277, 489 N.E.2d 288, 290, and appellant's first assignment of error is overruled.

The decision of the court of common pleas is affirmed.

*Judgment affirmed.*

Doan, P.J., Hildebrandt and Sundermann, JJ., concur.