[Cite as *State v. Jackson*, 2014-Ohio-3611.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-130240 |
| | | TRIAL NO. B-1004540 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| STEVEN JACKSON, | : | |
| | | |
| Defendant-Appellant. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  August 22, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Arenstein & Gallagher*, *William R. Gallagher* and *Elizabeth Conkin*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DINKELACKER, Presiding Judge.**

{¶1} Defendant-appellant Steven Jackson was charged with escape after he left the Volunteers of American halfway-house program without permission in July 2012. Following a bench trial, the trial court found him not guilty by reason of insanity ("NGRI"). As required by R.C. 2945.40, the court held a hearing within ten days and found that Jackson was a mentally ill person subject to hospitalization. It ordered his commitment to Summit Behavioral Healthcare Center ("Summit").

{¶2} In April 2013, the trial court held a hearing to review Jackson's commitment as required by R.C. 2945.401. Summit submitted a report stating that Jackson was still a mentally ill person subject to hospitalization and that Summit remained "the least restrictive treatment setting, consistent with his medical health needs and the safety of the community." The report further stated that "[i]t is currently the opinion of the treatment team * * * that Mr. Steven Jackson remains clinically appropriate for a privilege level of 4. No increase in privilege level is recommended at this time." Under privilege level four, Jackson was permitted to go on supervised visits in the community.

{¶3} Jackson's counsel stipulated to the report and presented no other evidence. The trial court then found by clear and convincing evidence that Jackson was a mentally ill person subject to commitment and that the least restrictive alternative consistent with public safety and Jackson's welfare was continued placement at Summit. The court then advised Jackson of his right to appeal.

{¶4} When the court asked if there was anything further, the prosecutor stated that "one thing I would bring up for Mr. Jackson's benefit is, I was asked this morning by [Jackson's counsel] how Mr. Jackson would go about getting level five,

which would be the next step up in privileges." He went on to state, "He just needs to work with treatment team on that and when they feel he's ready they will let the Court know." Then, because Jackson had indicated that he wanted to appeal, the court stated that he would appoint appellate counsel for him. Then, the hearing concluded.

{¶5} The court subsequently journalized a judgment entry stating its findings from the hearing, and Jackson filed a timely appeal from that judgment. Jackson's appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), in which she stated that she was unable to find any error that would entitle her client to relief. She requested this court to independently review the record to determine if the proceedings were free from prejudicial error, and moved for permission to withdraw.

{¶6} This court held that *Anders* is not applicable to appeals from involuntary-commitment orders. *State v. Jackson*, 1st Dist. Hamilton No. C-130240, 2014-Ohio-613, ¶ 12. Therefore, we granted counsel's motion to withdraw, appointed new counsel, and ordered the new counsel to file a brief on the merits. *Id.* at ¶ 14.

{¶7} Jackson now presents three assignments of error for review. In his first assignment of error, he contends that the trial court erred in failing to inform him of his rights as required by R.C. 2945.40(C). He argues that the court had a mandatory duty to inform him of the rights specified in the statute and that the court's failure to inform him of those rights prejudiced him. This assignment of error is well taken.

{¶8} R.C. 2945.401 governs the continuing jurisdiction of the trial court over a person committed following an NGRI acquittal. It requires the court to conduct a review hearing six months after the commitment order, and then every two years following the initial review. R.C. 2945.401(C). The hearing is not a criminal proceeding. *Jackson*, 1st Dist. Hamilton No. C-130240, 2014-Ohio-613, at ¶ 9; *State v. Z.J.*, 8th Dist.

3

Cuyahoga No. 87912, 2007-Ohio-552, ¶ 18; *State v. Wachtel*, 4th Dist. Athens No. 98CA47, 2000 Ohio App. Lexis 4089, *6 (Aug. 29, 2000).

{¶9}    At any hearing held under that section, the person found NGRI shall have all the rights of "a person at a commitment hearing as described in section 2945.40 of the Revised Code." R.C. 2945.401(F). R.C. 2945.40(C) provides:

> If a person is found not guilty by reason of insanity, the person has the right to attend all hearings conducted pursuant to sections R.C. 2945.37 to 2945.402 of the Revised Code. At any hearing conducted pursuant to one of those sections, the court *shall* inform the person that the person has all of the following rights:
>
> > (1) The right to be represented by counsel and to have that counsel appointed at public expense if the person is indigent * * *;
> >
> > (2) The right t0 have independent expert evaluation and to have that independent expert evaluation provided at public expense if the person is indigent;
> >
> > (3) The right to subpoena witnesses and documents, to present evidence on the person's behalf, and to cross-examine witnesses against the person;
> >
> > (4) The right to testify in the person's own behalf and to not be compelled to testify;
> >
> > (5) The right to have copies of any relevant medical or mental health document in the custody of the state or of any place of commitment other than a document for which the court finds that the release to the person of information contained in the

document would create a substantial risk of harm to any

person.

(Emphasis added.)

{¶10} Very little case law exists interpreting this statute or exploring the consequences of the trial court's failure to comply with its provisions. The trial court has "extensive authority to control the nature and disposition of an insanity acquittee's commitment." *State v. Kinman*, 109 Ohio App.3d 95, 98, 671 N.E.2d 1083 (1st Dist.1996), quoting *State v. Lanzy*, 58 Ohio St.3d 154, 158, 569 N.E.2d 468 (1991). But, as the Fourth Appellate District has stated, "[T]he General Assembly has determined that it is important for individuals facing the loss of their liberty or the continued deprivation of their liberty through involuntary or continued commitment to be informed of their rights during the hearing determining their commitment." *Wachtel*, 4th Dist. Athens No. 98CA47, 2000 Ohio App. LEXIS 4089, at *8. It went on to hold that "[w]e find that the General Assembly's use of the word 'shall' in 2945.40(C) places a duty upon the trial court to inform persons facing involuntary or continued commitment of the rights listed in that section." *Id.* *Accord State v. Doran*, 2d Dist. Montgomery No. 23750, 2010-Ohio-4530, ¶ 11-21.

{¶11} We agree with this reasoning. In this case, the trial court failed to comply with that mandatory duty. We need not decide whether the court must strictly or substantially comply with the statutory requirements because in this case, it did not comply at all. *See Wachtel* at *8-9. The perfunctory hearing in this case did not meet the statutory requirements.

{¶12} The state contends that Jackson effectively waived the issue by stipulating to Summit's psychiatric report and by failing to raise any objection. The doctrine of waiver applies to all personal rights and privileges, whether contractual,

statutory or constitutional. *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, 861 N.E.2d 109, ¶ 49. "A waiver is a voluntary relinquishment of a known right, with the intent to do so with full knowledge of all the facts." *N. Olmsted v. Eliza Jennings, Inc.*, 91 Ohio App.3d 173, 180, 631 N.E.2d 1130 (8th Dist.1993). Individuals may expressly or impliedly waive statutory provisions for their own benefit. *State ex rel. Wallace v. State Med. Bd.*, 89 Ohio St.3d 431, 435, 732 N.E.2d 960 (2000).

{¶13} Mere silence does not amount to a waiver where a party is not under a duty to speak. *Allenbaugh v. Canton*, 137 Ohio St. 128, 133, 28 N.E.2d 354 (1940); *Hightower v. Hightower*, 10th Dist. Franklin No. 02AP-37, 2002-Ohio-5488, ¶ 28.

> Before silence will be construed as a waiver of rights expressly conferred by statute, the duty to speak must be imperative, and the silence must clearly indicate an intent to waive, or be maintained under such circumstances that equity will impute thereto such intent. Where, however, the silence is, under the circumstances, susceptible of more than one interpretation, the waiver will not be inferred therefrom.

*Allenbaugh* at 133.

{¶14} Perhaps, in the proper case, an individual who is under treatment due to a NGRI verdict, could waive his or her rights. But nothing in the record in this case shows that Jackson intended to waive his rights simply because he did not assert them. The purpose of R.C. 2945.40(C) is to give an individual found NGRI notice of his or her rights. The record does not show that Jackson knew of his rights, much less that he waived them. To the contrary, the record shows that Jackson wanted level five privileges, the propriety of which would have warranted an

6

independent evaluation. *See Doran*, 2d Dist. Montgomery No. 23750, 2010-Ohio-4530, at ¶ 21.

{¶15} Further, while his counsel generally "stipulated to" the psychiatric report, the record does not show whether he was stipulating to the validity of the report's contents or simply to its existence or authenticity. On the record before us, we cannot hold that Jackson waived notice of his rights under R.C. 2945.40(C).

{¶16} Consequently, we sustain Jackson's first assignment of error. We reverse the trial court's judgment and remand the cause to the trial court for another hearing at which Jackson should properly be advised of his rights under the statute. In light of our disposition of Jackson's first assignment of error, we find his second and third assignments of error to be moot, and we therefore, decline to address them. *See* App.R. 12(A)(1)(c).

Judgment reversed and cause remanded.

**FISCHER** and **DEWINE, JJ.,** concur.

Please note:

The court has recorded its own entry this date.

7