THE STATE OF OHIO, APPELLEE, *v.* LANZY; WESTERN RESERVE PSYCHIATRIC HOSPITAL, APPELLANT.

[Cite as State *v.* Lanzy (1991), 58 Ohio St. 3d 154.]

(No. 90-147—Submitted January 9, 1991—Decided March 27, 1991.)

*Stephanie Tubbs Jones,* prosecuting attorney, *George J. Sadd, William J. Telzrow* and *Karen L. Johnson,* for appellee.

*Lee I. Fisher,* attorney general, and *David J. Kovach,* for appellant.

*Susan G. Tobin* and *S. Diane Nutter,* urging reversal for *amicus curiae,* Ohio Legal Rights Service.

DOUGLAS, J. The issue before us concerns the scope of a trial court's authority under R.C. 2945.40(F). Specifically, we are asked to decide whether a trial court, upon concluding that an insanity acquittee should be transferred to a less restrictive setting, has the authority to order that

prior court approval be secured before the transferee may leave the facility's premises. We find, *infra,* that a trial court does have the authority to place conditions on a transferee's confinement.

The trial court, in its journal entry, determined that Lanzy should be transferred to WRPH. The trial court ordered that:

"* * * [t]he defendant be further hospitalized at * * * [WRPH] for further treatment in accordance with [R.C.] 2945.40 * * * with extremely limited on-ground privileges to be accorded respondent in accordance with the treatment team decisions.

"* * * [T]he respondent shall not be permitted any off-ground supervised or unsupervised privileges without further and prior approval of the Court."

As a threshold matter, we reject WRPH's contention that the trial court is improperly attempting to regulate Lanzy's on-ground privileges at WRPH by including the language "extremely limited" in its order. We do so for the following reasons.

The trial court's use of the language "extremely limited on-ground privileges" does not place specific restrictions on Lanzy's treatment or privileges. At most, such language is advisory or cautionary in nature and, as such, superfluous to the order's true intent. Total autonomy remains entrusted in WRPH regarding Lanzy's treatment. This is evident by the court's including the language "in accordance with the treatment team decisions" in its order.

Therefore, the trial court's order, *when read in its entirety,* neither specifically sets forth restrictions on Lanzy's on-ground privileges nor interferes with WRPH's authority to treat Lanzy. Accordingly, WRPH's contention that the trial court is improperly attempting to regulate Lanzy's on-ground privileges while hospitalized at its facility lacks merit.

Next we turn our attention to the portion of the trial court's entry pertaining to Lanzy's "off-grounds" privileges. WRPH contends the trial court does not have the authority or jurisdiction to place conditions on Lanzy's supervised off-ground privileges while institutionalized at its facility, *i.e.,* requiring prior court approval before Lanzy may leave WRPH's premises even though accompanied by a staff member.

At issue in the instant cause is R.C. 2945.40(F),[1] providing the procedure a forensic facility must follow before it can discharge, release, authorize a trial visit for, or transfer a person committed under R.C. 2945.40. The facility is required to notify the trial court, Attorney General and prosecutor of its plan to alter a patient's custodial arrangement. After a full hearing has been held, the trial court has the authority to "discharge, release, authorize a trial visit for, or *transfer* the person or continue commitment pursuant to division (C) of this section." (Emphasis added.)

---

[1] Appellee, state of Ohio, makes an argument that the trial court's order is, in effect, a release or conditional release. However, this is not the case. The trial court neither released nor conditionally released Lanzy from either Dayton or WRPH. Rather, the trial court, after notification by Dayton, and after a hearing, determined Lanzy's treatment needs could be better accommodated at WRPH. In so concluding, the trial court found Lanzy should be *transferred* to WRPH. The condition attached to the order, requiring prior court approval, does not convert the transfer into a release or conditional release.

The crux of WRPH's argument is that because R.C. 2945.40(F) does not *explicitly* provide that a trial court may place conditions on a transfer order, the court necessarily is without the authority or jurisdiction to do so. However, such an argument is unfounded. Nothing in the history of R.C. 2945.40(F), or of the entire statute for that matter, indicates that the General Assembly intended to preclude the trial court from placing conditions on a patient's confinement when the patient is transferred to a less restrictive setting. We have noted on previous occasions that relying on legislative inaction to infer legislative intent can, and often will, lead to an inaccurate conclusion. See *Greeley* v. *Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St. 3d 228, 231, 551 N.E. 2d 981, 984. Additionally, by accepting WRPH's argument, we would ignore the general scheme and purpose for which the statute was enacted.

In 1980, the General Assembly amended R.C. 2945.40[2] in Am. Sub. S.B. No. 297, 138 Ohio Laws, Part I, 991-997, transferring jurisdiction over commitment and release hearings from probate courts to trial courts of general jurisdiction. The 1980 amendment greatly affected the role the trial court is to assume, providing the trial court with considerable governance over matters concerning the nature and disposition of an insanity acquittee's commitment. The following examples clearly illustrate the General Assembly's intent to cloak the trial court with a broad spectrum of powers when confronted with issues involving the nature and disposition of an insanity acquittee's commitment.

For instance, R.C. 5122.15(E) provides criteria a trial court must follow when determining an insanity acquittee's initial placement. Section (E) states in relevant part that:

"In determining the place to which, or the person with whom, the respondent is to be committed, the court shall consider the diagnosis, prognosis, preferences of the respondent, and projected treatment plan for the respondent and order the implementation of the least restrictive alternative available and consistent with treatment goals and, in the case of a person found not guilty by reason of insanity, with public safety. * * *"

Equally persuasive is R.C. 2945.40(D)(1), which, among other things, addresses a trial court's authority to grant a patient a conditional release as part of the least restrictive commitment alternative.[3] Section (D)(1) provides in pertinent part:

"* * * In determining whether to grant conditional release, the court shall evaluate the potential risks to public safety and the welfare of the person. In evaluating the potential risks to public safety, the court shall consider the current quantity of psychotropic drugs and other treatment the person is receiving and the likelihood the person will continue to take the drugs and continue the other treatment while on conditional release.

"If the court makes a determination to grant a conditional release, it may set any conditions on the release

---

[2] R.C. 2945.40 has been amended four times since 1980, the most recent amendment being effective July 24, 1990. The subsequent amendments do not affect today's holding.

[3] R.C. 2945.40(D)(1) is also applicable at any hearing in which the discharge of an insanity acquittee is at issue and when the court is contemplating whether to grant the patient a conditional release in lieu of a discharge. R.C. 2945.40(D)(5).

with respect to treatment, evaluation, counseling, or control of the respondent that ensure the protection of the public safety and the welfare of the person."

Furthermore, when a patient's continued commitment is at issue, a trial court is required to follow the mandates of R.C. 2945.40(C).[4] R.C. 2945.40(D)(1) incorporates section (C) of the statute by reference and, in addressing conditional releases, provides that: "[i]n deciding the nature of commitment pursuant to division (C) of this section, the court shall order the implementation of the least restrictive commitment alternative available consistent with the public safety and the welfare of the person. * * *"

Indeed, as can be gleaned from the foregoing legislation, the General Assembly intended to equip a trial court with extensive authority to control the nature and disposition of an insanity acquittee's commitment. The legislation also reveals that the General Assembly intended to strike a balance between humane and reasonable accommodations to the patient and, at the same time, consider the community's interest in being protected from a potentially dangerous person. Naturally, to effectuate this balance, the trial court must be able to control the nature of a transferee's commitment. This logically and necessarily includes a trial court's authority to place conditions on the patient's confinement. Thus, we are persuaded, after reading R.C. 2945.40 in its entirety and in the context in which it was amended, that the authority to transfer a person, found not guilty of a criminal offense by reason of insanity, from a maximum security facility to a less restrictive setting necessarily and implicitly includes the authority to

place conditions on the patient's confinement. We further find that any conditions placed on the patient's confinement by the court should be consistent with the welfare of the patient and the safety of the public. Additionally, the determination that a transfer is warranted and the conditions placed thereon are within the sound discretion of the trial court.

We believe that today's holding which finds that a trial court has the authority to place conditions on a transferee's confinement is also consistent with prior decisions from this court. In *State* v. *Johnson* (1987), 32 Ohio St. 3d 109, 512 N.E. 2d 652, we held, *inter alia,* that it is within the sound discretion of the trial court to determine whether an insanity acquittee should be transferred to a less restrictive environment. We reached this conclusion by observing that:

"The welfare of the patient and the safety of the public are always relevant considerations in the disposition of a person found not guilty of a criminal offense by reason of insanity. Such considerations are statutorily mandated in the initial determination of the appropriate placement of an insanity acquittee and in any decision to grant conditional release, R.C. 2945.40(D)(1) and 5122.15(E), as well as in determining whether discharge is appropriate, R.C. 2945.40(D)(5). We are convinced that the factors of public safety and the patient's welfare are equally relevant to a determination of whether to transfer an insanity acquittee from one treatment facility to another, less restrictive one. Where fewer restrictions will be placed on the freedom of movement of such a person, it is only logical that the increased risk to the public and to the patient's personal welfare be taken into consideration." *Id.* at 111-112, 512 N.E. 2d at 655, fn. 3.

---

[4] See R.C. 2945.40(F).

In *Townsend* v. *McAvoy* (1984), 12 Ohio St. 3d 314, 12 OBR 385, 466 N.E. 2d 555, an insanity acquittee challenged the trial court's continuing jurisdiction when the state failed to file an application for continued commitment in a timely manner. We held in the syllabus that:

"The trial court has jurisdiction to decide questions relating to the continued commitment of a person committed pursuant to R.C. 2945.40 after being found not guilty by reason of insanity, and such jurisdiction continues until the time of lawful discharge."

We determined, after examining R.C. 2945.40(F), that the insanity acquittee could not be lawfully discharged in the absence of notice to the trial court, reasoning that:

"This special notice requirement is designed to guard against inadvertent or misguided release of individuals who pose a particularly great threat to the safety of the public. R.C. 2945.40 and 5122.15 are replete with provisions, applicable only to those acquitted because of insanity, which ensure that extensive control will continue to be exercised over the individual by the trial court wherein he was acquitted and found to be mentally ill. These provisions evidence a clear intent that the trial court is to have continuing jurisdiction." (Footnote omitted.) *Id.* at 316, 12 OBR at 387, 466 N.E. 2d at 557.

It is apparent from the record that the condition placed upon Lanzy's transfer, requiring prior court approval before Lanzy is to be afforded any off-ground privileges, was influenced by Lanzy's history as a mental patient. At the time of the hearing, Lanzy was said to be suffering from paranoid schizophrenia and from an anti-social personality disorder, requir-

ing an above average dose of medication to control his condition. Lanzy's status report signed by Dr. Keith Markley and Dr. Jaseem Pasha stated that Lanzy was in "partial remission." Since 1984, Lanzy has journeyed between Dayton and WRPH. Lanzy's history reveals that he has been noncompliant with taking his medication while hospitalized. The record indicates when Lanzy does not take his medication, he becomes more "paranoid" and threatening. In 1986, while hospitalized at WRPH, Lanzy had "numerous behavior problems," which apparently included threatening a WRPH staff worker. He was subsequently readmitted to Dayton. Dr. Magdi S. Rizk, medical director of WRPH, testified at the May 1988 hearing, and when asked if he felt Lanzy represented a risk of physical harm to himself or others, Dr. Rizk stated: "* * * [b]ased on [Lanzy's] past history of the incident itself, in addition to his past history at * * * [WRPH], in addition to the diagnostic entry, he carries all these items, yes, I do place him as a potential risk for others if he doesn't take his medication." Under the circumstances, the trial court's order requiring prior approval before Lanzy could be afforded any supervised or unsupervised off-ground privileges was entirely proper.

Obviously, the trial court, when fashioning its order, took into consideration the treatment needs of Lanzy and, at the same time, realized that without a means to monitor Lanzy's condition, a potentially dangerous situation could arise ultimately affecting the safety of the public. It is also important to note that the trial court's order does not infringe upon WRPH's authority to treat Lanzy,[5] nor does the order forever bar Lanzy from leaving

---

[5] WRPH also argues that the trial court's order would have the effect of not

allowing Lanzy to leave the facility's premises if he were in need of exigent

WRPH's premises. Rather, the order allows a trial court to assess a patient's commitment and, consistent with the welfare of the patient and safety of the public, determine, at a later date, whether the patient's commitment could extend beyond the facility's premises.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

SWEENEY, HOLMES and RESNICK, JJ., concur.

MOYER, C.J., WRIGHT and H. BROWN, JJ., dissent in part and concur in part.

H. BROWN, J., dissenting in part and concurring in part. Although I concur in the judgment, I disagree with the majority that a trial court's authority to transfer a person found "not guilty by reason of insanity" ("NGRI") from a more restrictive facility to a less restrictive facility under R.C. 2945.40(F) includes the authority to place conditions on the patient's confinement. Therefore, I must respectfully dissent from the majority's syllabus and opinion. I also dissent from the majority's conclusion that the trial court's order that Lanzy's on-ground privileges be "extremely limited" did not interfere with his treatment decisions.

At issue is the trial court's authority under R.C. 2945.40(F) when making a transfer decision.[6] As required by R.C. 2945.40(F), the treatment personnel at Dayton Forensic Center, the maximum security treatment facility where Lanzy was confined, notified the trial court that Lanzy's condition had improved to the extent that they recommended his transfer to a less restrictive facility such as Western Reserve Psychiatric Hospital ("WRPH"). The trial court held a hearing, approved Lanzy's transfer, and placed conditions on Lanzy's confinement and treatment in conjunction with the transfer order. The statutory authority to place conditions on a NGRI patient's treatment and confinement is at issue here.

Without statutory authority, the trial court has no power to control the patient's treatment or confinement. The majority finds this power in R.C. 2945.40(F), but an examination of the statute reveals no such authority.

R.C. 2945.40(F) authorizes the trial court to grant or deny a discharge, release, trial visit, or transfer when recommended by the treatment personnel at the facility in which the NGRI patient is then committed. The trial court shall hold a full hearing after which the court may authorize the request or deny it and continue commitment as before. Nothing in R.C. 2945.40(F), as the majority concedes, explicitly authorizes the trial court to place *conditions* on a NGRI patient's treatment when it authorizes a discharge, release, trial visit, or transfer from a more restrictive to a less restrictive facility. The majority, however, goes on to read into

---

medical treatment, *i.e.*, if Lanzy should suffer a heart attack, he could not be transported to a hospital. However, this is an argument without substance. Obviously, the trial court did not intend to require approval if an immediate life-threatening situation should arise that could not be rectified at WRPH's facility.

[6] I agree with the majority that the trial court's order at issue in this case is a transfer decision under R.C. 2945.40(F) and that the conditions upon that transfer do not convert the decision into a release or conditional release decision.

the statute the implicit authority to place conditions on a patient's confinement as long as those conditions are consistent with the patient's welfare and public safety. While I agree with some of the reasoning in the majority's holding, I disagree with the proposition that the authority to transfer under R.C. 2945.40(F) gives a trial court discretionary powers to place conditions on a patient's confinement.

The majority correctly notes that the legislature intended to strike a balance between the NGRI patient's welfare and the public's safety. However, the authority for striking this balance is in the full hearing provision of R.C. 2945.40(F). At this hearing, the trial court weighs the patient's welfare and treatment needs against the public safety and determines whether to make the recommended change in the patient's confinement or continue the status quo. *State* v. *Johnson* (1987), 32 Ohio St. 3d 109, 512 N.E. 2d 652. This balancing process is an inherent part of the decision to discharge, release, grant a trial visit, or transfer a patient from one facility to another and was the crux of our holding in *Johnson, supra*. While the trial court has the authority to make one of the four statutorily authorized decisions, the court does not have the power to control the patient's treatment in the facility to which the patient is assigned. See *State* v. *Lanzy* (1985), 29 Ohio App. 3d 244, 29 OBR 306, 504 N.E. 2d 1150. Nor does *Johnson, supra,* grant authority for a court to place *conditions* on the patient's confinement as a part of the decision to grant a transfer.[7]

In this case appellant WRPH challenges two conditions that the trial court placed on Lanzy's transfer order. The conditions are (1) that Lanzy's on-ground privileges be "extremely limited * * * in accordance with the treatment team decisions," and (2) that WRPH must obtain the trial court's approval before Lanzy is allowed any off-ground privileges.

Turning to the restriction on Lanzy's on-ground privileges, the trial court had no authority to place restrictions, of even a cautionary or advisory nature, on Lanzy's treatment. The practical effect of such an order will be to inhibit the treatment decisions of mental health professionals who are reluctant to risk the trial court's contempt power. These professionals should not be forced to cope with a nonspecific and uncertain order which the trial court has no authority to make. Thus I would not, as the majority has done, cure an unlawful order by finding that it is merely advisory and can be disregarded.

With respect to the trial court's order limiting Lanzy's off-ground privileges, I agree with the majority that the trial court must be consulted before a NGRI patient is allowed to make supervised excursions off the premises of the treatment facility. But, for the reasons stated above, I cannot agree that the trial court's order is proper as a condition placed upon a transfer pursuant to R.C. 2945.40(F). Instead, I conclude that when a NGRI patient goes off-grounds from the facility to which he has been assigned by the court, that patient is being granted a conditional release. R.C. 2945.40(D)(4) mandates notification to and approval of the trial court before a

---

[7] The trial court does retain continuing jurisdiction to decide questions related to a NGRI patient's continued commitment until his discharge. *Townsend* v. *McAvoy* (1984), 12 Ohio St. 3d 314, 12 OBR 385, 466 N.E. 2d 555, syllabus. However, such jurisdiction must remain both authorized and limited by statute.

NGRI patient may be given a conditional release.[8]

WRPH argues that supervised off-ground privileges are not conditional releases and not within the trial court's jurisdiction.[9] It maintains that the decision to allow a patient to go on a supervised excursion off the facility premises is a treatment decision. It further contends that treatment decisions are within the exclusive jurisdiction of the mental health professionals.

A supervised excursion off the treatment facility site may bear a relationship to treatment, but it is more than that. Just because a mental health decision has an effect upon treatment does not preempt a court's authority over the patient where the court is empowered to act by statute. For instance, when mental health professionals recommend a discharge, release, transfer, or trial visit for a NGRI patient, that is a treatment deci-

---

[8] R.C. 2945.40(D)(4) provides as follows:

"At any time after commitment pursuant to this section, if, after evaluating the potential risks to public safety and the welfare of the person, the chief clinical officer of the hospital or facility, or the managing officer of the institution, or director of the program, or the person to which a person found not guilty by reason of insanity is committed recommends the conditional release of the committed person, the chief clinical officer, managing officer, director, or person shall send written notice of the proposed conditional release by certified mail to the trial court in which the person was found not guilty by reason of insanity, the attorney general and the prosecutor. Within fifteen days after receiving the notice, the trial court or prosecutor may request a full hearing on whether the person shall be conditionally released by so informing the head, officer, director, or person. If the court or prosecutor does not request a hearing within the fifteen-day period, the chief clinical officer, managing officer, director, or person may grant the conditional release on such conditions as are set forth in division (D)(1) of this section. If a hearing is requested, the trial court shall hold a full hearing within thirty days after the hearing is requested on whether the conditional release should be granted and shall give the prosecutor and attorney general written notice of the time and place of the hearing at least fifteen days before it is held. At the conclusion of the hearing, the court may grant conditional release pursuant to this section."

With respect to making the decision to grant a conditional release, R.C. 2945.40(D)(1) provides:

"In deciding the nature of commitment pursuant to division (C) of this section, the court shall order the implementation of the least restrictive commitment alternative available consistent with the public safety and the welfare of the person. As part of the least restrictive commitment alternative, the court may grant conditional release to a person found not guilty by reason of insanity. In determining whether to grant conditional release, the court shall evaluate the potential risks to public safety and the welfare of the person. In evaluating the potential risks to public safety, the court shall consider the current quantity of psychotropic drugs and other treatment the person is receiving and the likelihood the person will continue to take the drugs and continue the other treatment while on conditional release.

"If the court makes such a determination, it may set any conditions on the release with respect to treatment, evaluation, counseling, or control of the respondent that ensure the protection of the public safety and the welfare of the person."

[9] WRPH concedes that granting a NGRI patient unsupervised off-ground privileges constitutes a release for which the trial court's approval must be obtained. See *State* v. *Dixon* (Dec. 27, 1984), Cuyahoga App. Nos. 48253 and 48254, unreported.

sion. However, R.C. 2945.40(F) authorizes the trial court to make these decisions even though they involve treatment considerations.

The trial court's decision to transfer the patient represents a determination that the facility to which the patient is assigned is adequately prepared to cope with any risk that the NGRI patient poses to the facility's personnel, the patient population, or the patient himself.

The situation is different, however, when a NGRI patient is taken out of the facility and allowed to interact with the public at large. Assignment to a hospital does not contemplate allowing a NGRI patient to mingle with the public at shopping malls and sporting events even when chaperoned by the treatment facility's personnel. The trial court has not been afforded the opportunity to specifically weigh and approve the risk that such excursions pose to public safety. R.C. 2945.40(D)(4) requires that the trial court be notified before a NGRI patient is released (even for a short time) to mingle with the general public.

Since R.C. 2945.40(D)(4) requires WRPH to notify the court before granting off-ground privileges, the court's order in that respect did not impermissibly interfere with WRPH's treatment decisions pertaining to Lanzy.

MOYER, C.J., and WRIGHT, J., concur in the foregoing opinion.