The STATE OF OHIO, Appellee,

v.

CROSSAN, Appellant.

[Cite as *State v. Crossan* (1997), 122 Ohio App.3d 511.]

Court of Appeals of Ohio,
Fourth District, Meigs County.

No. 97 CA 004

Decided Sept. 10, 1997.

*John Lentes*, Meigs County Prosecuting Attorney, for appellee.

*Pat Story*, for appellant.

KLINE, Judge.

Cheryl A. Crossan appeals from the Meigs County Court of Common Pleas order placing her under daily house arrest. The trial court found Crossan not guilty by reason of insanity on breaking and entering charges, then ordered house arrest as part of her conditional release. Crossan contends that the court abused its discretion by ordering house arrest despite a lack of evidence suggesting that house arrest is necessary for the protection of Crossan or the community. We disagree. Accordingly, we affirm the judgment of the trial court.

I

In July 1996 the Meigs County Grand Jury indicted Crossan for breaking and entering. At her arraignment, the trial court appointed counsel for Crossan and ordered an examination to assess her competency to stand trial. At a subsequent hearing, the court found Crossan competent to stand trial, but granted her leave to enter a plea of not guilty by reason of insanity and ordered an evaluation of her mental state at the time of the offense.

Shawnee Forensic Center ("SFC") conducted both of the court-ordered evaluations of Crossan's mental state. In a letter to the court, the SFC advised the court that Crossan suffers from bipolar disorder, and that this condition caused her not to appreciate the wrongfulness of her actions associated with the breaking and entering offense. Additionally, the SFC indicated that the least restrictive commitment alternative for Crossan would be her direct conditional release with mandatory outpatient treatment.

Pursuant to an agreement between the state of Ohio and Crossan, the court found Crossan not guilty by reason of insanity. The court further found that Crossan is a person who is mentally ill subject to hospitalization pursuant to R.C. 2945.40(C), and that a conditional release of Crossan was the least restrictive commitment alternative consistent with public safety and Crossan's welfare.

The court held a hearing on Crossan's conditional release, at which David Malawista, a licensed psychologist with SFC, was the only witness. Malawista

testified that Crossan's bipolar disorder was substantially under control. Malawista recommended that Crossan be released with the following conditions: (1) Crossan must submit to monitoring, via weekly face-to-face contact with Woodland Center mental health staff, to ensure that she is taking her prescribed medication and keeping her psychosis under control, (2) Crossan must meet with several specified psychologists, psychiatrists, and social workers upon her immediate release, (3) Crossan agrees to refrain from consuming any alcohol or drugs of abuse and will submit to random drug tests, and (4) Crossan will be subject to random laboratory tests to guarantee that she continues to take her prescribed medication. Malawista also recommended that the court order any medical or mental health professional who is overseeing the implementation of the conditional release plan to notify the court immediately if Crossan fails to comply with the stated conditions.

The court *sua sponte* asked Malawista whether placing Crossan under house arrest would benefit the community. Malawista responded that house arrest was not necessary to protect the safety of the community or Crossan.

The court adopted the plan recommended by Malawista in its entirety. In addition, the court ordered that Crossan be confined to her home from 10:00 p.m. to 6:00 a.m. daily. Crossan appeals the court's decision to impose this house-arrest condition, asserting the following assignment of error:

"The trial court erred when it ordered, as part of a conditional release plan, that appellant remain under house arrest from 10:00 p.m. to 6:00 a.m."

## II

Crossan asserts that, because the record does not reflect that an order of nightly house arrest is necessary for public safety or her welfare, the trial court abused its discretion by ordering house arrest as part of her conditional release plan. Crossan contends that the trial court failed to comply with the R.C. 2945.40(D)(1) mandate that the court implement the "least restrictive commitment alternative available." The state contends that conditional release is the least restrictive alternative by statutory definition and that, once the court chooses conditional release, it has broad discretion in determining the conditions upon which the release will depend.

R.C. 2945.40(D)(1) addresses a trial court's authority to grant a patient a conditional release as part of the least restrictive commitment alternative. Additionally, subsection (D)(1) describes the trial court's authority to determine the terms and conditions of a conditional release. Subsection (D)(1) provides:

"In deciding the nature of commitment * * * the court *shall* order the implementation of the least restrictive commitment alternative available consis-

tent with the public safety and the welfare of the person. As part of the least restrictive commitment alternative, the court may grant conditional release to a person found not guilty by reason of insanity.

" * * *

*"If the court makes a determination to grant a conditional release, it may set any conditions on the* release with respect to treatment, evaluation, counseling, or control of the respondent that ensure the protection of the public safety and the welfare of the person." (Emphasis added.)

The Supreme Court of Ohio has construed R.C. 2945.40(D)(1) as it relates to insanity acquittees who seek to be transferred to less restrictive settings. In that context, the court determined that R.C. 2945.40 "cloak[s] the trial court with a broad spectrum of powers when confronted with issues involving the nature and disposition of an insanity acquittee's commitment." *State v. Lanzy* (1991), 58 Ohio St.3d 154, 157, 569 N.E.2d 468, 470. Furthermore, the court determined that, when read in its entirety, R.C. 2945.40 "necessarily and implicitly includes the authority to place conditions on [an insanity acquittee's] confinement." *Id.* at 158, 569 N.E.2d at 471.

■ The nature and conditions of the insanity acquittee's confinement are a determination which lies within the sound discretion of the trial court. *Id.; State v. Johnson* (1987), 32 Ohio St.3d 109, 112, 512 N.E.2d 652, 655–656. The trial court may choose to reject the recommendations of both the state and the acquittee and order the acquittee to a more secure setting without abusing its discretion. *State v. Gladding* (1991), 72 Ohio App.3d 16, 21, 593 N.E.2d 415, 417–418. Furthermore, the court does not abuse its discretion by rejecting the recommendation of the hospital caring for the acquittee; rather, the court is assumed to have an independent role in the determination. *State v. Swiger* (June 6, 1995), Tuscarawas App. No. 94 AP 100073, unreported, 1995 WL 495393.

■ A finding that a trial court abused its discretion involves more than an error of judgment; it implies that the court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. When applying the abuse-of-discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308–1309.

Here, the trial court chose conditional release as the least restrictive commitment alternative that would ensure the safety of Crossan and the public. Crossan does not contest the finding that a conditional release is the least restrictive commitment alternative available to her.

Once the court determined that it would grant Crossan a conditional release, it was free to "set any conditions on the release with respect to * * * control of the respondent that ensure the protection of the public safety and welfare of the person." R.C. 2945.40(D)(1). The plain language of the statute indicates that conditions set on conditional release need not be necessary, but only consistent with, the protection of the public and the insanity acquittee. We find that the determination of conditions is a discretionary decision for the court at the start of a commitment or conditional release just as the transfer of an acquittee during his or her commitment is a discretionary decision for the court. *Lanzy, supra,* 58 Ohio St.3d at 157, 569 N.E.2d at 470–471; *Johnson, supra,* at syllabus.

Though Malawista indicated that house arrest is not necessary to ensure the protection of Crossan and the community, he stated that house arrest "might be appropriate" to address the personality problems that may have led to Crossan's alcohol abuse and addiction in the past. While we may not have chosen to impose the house-arrest condition given Malawista's hesitant endorsement, we will not substitute our judgment for that of the trial court.

We note that a conditional release is a type of commitment, and that the trial court will retain continuing jurisdiction over any commitment. R.C. 2945.402. Additionally, as an individual committed pursuant to R.C. 2945.40, Crossan is entitled to periodic hearings on her continued commitment or on any changes in the conditions of her continued commitment. R.C. 2945.40 and 2945.401. Finally, we note that, except upon a request for civil commitment by the prosecutor and a hearing, Crossan's commitment will terminate no later than the expiration of the maximum prison term which Crossan could have served had she been convicted of the most serious offense for which she was found not guilty by reason of insanity. R.C. 2945.401(J)(1).

In conclusion, we find that the trial court did not abuse its discretion when it imposed the condition of house arrest from 10:00 p.m. to 6:00 a.m. daily upon the conditional release of Crossan from psychiatric hospitalization. Accordingly, we overrule Crossan's only assignment of error and affirm the judgment of the trial court.

*Judgment affirmed.*

PETER B. ABELE and HARHSA, JJ., concur.