[Cite as *State v. D.M.*, 2019-Ohio-4686.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
|     Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2019 CA 00003 |
| DANIEL M. | |
|     Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common Pleas, Case No. 2018 CR 00205

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     November 13, 2019

APPEARANCES:

For Plaintiff-Appellee

ERIC M. DEPUE
ASSISTANT PROSECUTOR
20 North Second Street, 4th Floor
Newark, Ohio 43055

For Defendant-Appellant

JAMES A. ANZELMO
446 Howland Drive
Gahanna, Ohio 43230

*Wise, J.*

**{¶1}** Appellant Daniel M. appeals the decision of the Court of Common Pleas, Licking County, which ordered, subsequent to a plea of not guilty by reason of insanity for felonious assault, involuntarily hospitalization and medication. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

**{¶2}** On March 27, 2018, officers from the Hebron Police Department responded to an address on Raspberry Circle where appellant had become "enraged" and attacked a male victim with a sword, causing a severe laceration on the man's arm. Plea Tr. at 8.

**{¶3}** On April 5, 2018, appellant was indicted on one count of felonious assault (R.C. 2903.11), a felony of the second degree.

**{¶4}** On August 21, 2018, appellant, with the assistance of counsel, pled not guilty to the aforesaid charge by reason of insanity. On the same day, the trial court accepted appellant's plea and found him not guilty by reason of insanity. The trial court also ordered appellant to be evaluated as to whether he should be subject to hospitalization, pursuant to R.C. 2945.40(B). *See* Judgment Entry, August 21, 2018. The court ordered a report on appellant's evaluation to be filed within ten days of the date of the plea; however, the court subsequently granted an extension to file the report on or before September 20, 2018.

**{¶5}** Appellant was evaluated by Dr. Daniel Hrinko on September 17, 2018. *See* State's Exhibit 1. At that time, appellant was in placement at the Twin Valley Behavioral Healthcare Center in Columbus, Ohio. On September 24, 2018, Dr. Hrinko issued his written evaluation. He therein recommended that appellant be placed in a locked psychiatric facility for treatment.

{¶6} On December 5, 2018, the State filed a motion asking the trial court to order appellant to undergo forced medication because he was refusing treatment. On December 11, 2018, the trial court held a hearing on the State's aforesaid request. At the hearing, appellant moved for dismissal and discharge under the time requirements of R.C. 2945.40(B), in accordance with his similar written motion filed on November 7, 2018.

{¶7} The trial court issued a judgment entry on December 13, 2018, ordering *inter alia* that appellant undergo treatment for mental illness at Twin Valley Behavioral Healthcare and to undergo forced medication administration. Appellant's request for discharge was denied.

{¶8} On January 8, 2019, appellant filed a notice of appeal. He herein raises the following three Assignments of Error:

{¶9} "I. THE TRIAL COURT ERRED BY DENYING [APPELLANT'S] MOTION TO DISMISS, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 1, ARTICLE I, OF THE OHIO CONSTITUTION.

{¶10} "II. THE TRIAL COURT ERRED BY PLACING [APPELLANT] UNDER INVOLUNTARY HOSPITALIZATION, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 1, ARTICLE I, OF THE OHIO CONSTITUTION.

{¶11} "III. THE TRIAL COURT ERRED BY ORDERING [APPELLANT] TO UNDERGO FORCED MEDICATION, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 1, ARTICLE I, OF THE OHIO CONSTITUTION."

*Appellate Jurisdiction*

**{¶12}** As an initial matter, we have *sua sponte* observed in our review of the procedural history of this case that on March 14, 2019, approximately two months after appellant filed his notice of appeal, the trial court held a subsequent "hearing on [the] Twin Valley Report." In the resulting March 14, 2019 judgment entry issued by the trial court, appellant was again at that time *inter alia* "ordered to undergo treatment for this mental illness at Twin Valley Behavioral Healthcare, Civil Unit, (Kosar), for post-NGRI treatment" although the court added Level III movement privileges. No notice of appeal is evident regarding this March 14, 2019 order, which appears to be a "continued commitment" ruling under R.C. 2945.401(C). This raises the question of whether the December 13, 2018 judgment entry under appeal should be treated as an interlocutory order that has been superseded by a subsequent judgment entry and thus been rendered moot. *Cf. In re Harris*, 8th Dist. Cuyahoga No. 76631, 2000 WL 1643569.

**{¶13}** In *Wachtel v. Athens Cty. Common Pleas Court*, 4th Dist. Athens No. 01CA25, 2002-Ohio-1478, the Fourth District Court of Appeals determined that commitment rulings under R.C. 2945.40 are orders that affect substantial rights made in special proceedings for purposes of a final order determination under R.C. 2505.02(B)(2). *Id.* at ¶ 7. The Court also found that "*** since it may be as long as two years between continued-commitment hearings, *** each such hearing is a special proceeding." *Id.*

**{¶14}** In light of *Wachtel's* reasoning, we answer our above question in the negative and find we may proceed to the merits of the present appeal.

I.

{¶15} In his First Assignment of Error, appellant contends the trial court erred in denying his motion to dismiss the State's request for hospitalization. We disagree.

{¶16} R.C. 2945.40(B) states as follows: "The court shall hold the hearing under division (A) of this section to determine whether the person found not guilty by reason of insanity is a mentally ill person subject to court order or a person with an intellectual disability subject to institutionalization by court order within ten court days after the finding of not guilty by reason of insanity. Failure to conduct the hearing within the ten-day period shall cause the immediate discharge of the respondent, unless the judge grants a continuance for not longer than ten court days for good cause shown or for any period of time upon motion of the respondent."

{¶17} In the case *sub judice*, the trial court received Dr. Hrinko's evaluation of appellant on or about September 24, 2018. The hearing on said evaluation took place on December 11, 2018, clearly outside of the twenty "court day" maximum time frame of R.C. 2945.40(B) absent any motions for extension by appellant.

{¶18} However, the Second District Court of Appeals has addressed the issue before us. *See State v. Pollock*, 2nd Dist. Greene No. 2001-CA-32, 2002-Ohio-102. The Court in *Pollock* stated: "*** Ohio Supreme Court precedent as well as public policy considerations lead us to conclude that a trial court's failure to conduct a treatment hearing within the time limits of R.C. 2945.40(B) does not deprive the trial court of authority to order commitment of a mentally ill defendant." *Id.* The Court observed that R.C. 2945.40(B) "is a time restriction on the performance of an official duty" that contained no language terminating a trial court's jurisdiction or otherwise barring further proceedings

where said time restriction had not been met. The Court thus concluded: "*** [E]ven though Pollack [*sic*] was entitled to be discharged from custody pending the dispositional hearing, in view of the fact that the trial court waited too long to hold the hearing, his discharge would not have affected the court's continued jurisdiction to order treatment." *Id.*

**{¶19}** We concur with the reasoning of *Pollock* and herein hold the trial court did not err in the present case in denying appellant's request to dismiss.

**{¶20}** Appellant's First Assignment of Error is therefore overruled.

## II.

**{¶21}** In his Second Assignment of Error, appellant contends the trial court erred and violated his due process rights by placing him under involuntary hospitalization. We disagree.

**{¶22}** The nature and conditions of an insanity acquittee's confinement are a determination which lies within the sound discretion of the trial court. *State v. Crossan*, 122 Ohio App.3d 511, 514, 702 N.E.2d 157 (4th Dist.1997) (additional citations omitted). The trial court's discretion is guided under R.C. 2945.40(F) by an instruction to "give preference to public safety" when considering the acquittee's request. *State v. Stutler*, 5th Dist. Stark No. 2017CA00094, 2018-Ohio-1619, 101 N.E.3d 738, ¶ 21. Furthermore, as an appellate court, we are not the trier of fact. Our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Tennant v. Martin–Auer*, 188 Ohio App.3d 768, 936 N.E.2d 1013, 2010–Ohio–3489, ¶ 16, citing *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911. The weight to be given to the evidence and the credibility of the witnesses are

issues for the trier of fact. *See, e.g., State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180.

{¶23} Dr. Hrinko's written report of September 24, 2018 records that appellant, upon admission to Twin Valley on September 11, 2018, had exhibited disoriented thoughts, visual hallucinations, "racing thoughts" and expressions of unspecific suicidal ideations. *See* State's Exhibit 1. In his testimony at the December 11, 2018 hearing, Dr. Hrinko did make a number of positive comments about appellant, as pointed out in appellant's present brief. For example, regarding his September 17, 2018 evaluation, Dr. Hrinko testified that appellant "was functioning relatively well" and that his "thinking was relatively clear." Tr., Dec. 11, 2018, at 20. In regard to appellant's plans for the future, Dr. Hrinko recalled that appellant "had a reasonable insight and a reasonably good commitment to making things work this time ***." Tr. at 22. However, Dr. Hrinko observed that appellant had shown a tendency in the past, when leaving structured environments, to stop using his medications and begin using street drugs, thus "return[ing] to unstable flat-out dangerous behaviors." *Id.* Thus, Dr. Hrinko agreed that appellant's plan for being maintained in the community (*i.e.*, living with his mother and checking in with mental health care providers) was not sufficient. Tr. at 21-22. He also opined that "success requires more than being willing and committed." Tr. at 22. Dr. Hrinko concluded:

I believe that the least restrictive environment that would meet his needs and protect the safety of the community would be for him to be placed in a locked civil psychiatric facility to have the benefits of the supports in developing plans and opportunity to demonstrate those plans on a gradual

return to the community that is consistent with the programs that I've seen operate at Twin Valley in the past.

**{¶24}** Tr. at 23.

**{¶25}** The court also heard testimony and received a written report from Dr. Christopher Corner, a psychiatrist at Twin Valley. Although a previous doctor (Dr. Dagum) had "stabilized" appellant (*see* Tr. at 40, 44), Dr. Corner testified *inter alia* that in early December 2018, appellant had informed hospital staff that he was refusing all antipsychotic medication. Tr. at 41. Dr. Corner met with appellant, who was then presenting as "extremely disorganized" and "quite paranoid." *Id.* Dr. Corner opined that he thought appellant "would be a dangerous man in the community undedicated." Tr. at 42. He was in agreement with Dr. Hrinko's opinion that appellant needed to be institutionalized. *Id.*

**{¶26}** Upon review, we find no grounds in this instance to reverse the decision of the finder of fact who observed the proceedings firsthand, and we affirm the trial court's implicit conclusion that the facts and circumstances clearly and convincingly demonstrate appellant is a mentally ill person subject to continued hospitalization.

**{¶27}** Appellant's Second Assignment of Error is overruled.

III.

**{¶28}** In his Third Assignment of Error, appellant contends the trial court erred and violated his constitutional rights in ordering him to undergo the forced administration of psychiatric medication without making written findings. We disagree.

**{¶29}** The Ohio Supreme Court has established that "[a] court may issue an order permitting hospital employees to administer antipsychotic drugs against the wishes of an

involuntarily committed mentally ill person if it finds, by clear and convincing evidence, that: (1) the patient does not have the capacity to give or withhold informed consent regarding his/her treatment; (2) it is in the patient's best interest to take the medication, *i.e.*, the benefits of the medication outweigh the side effects; and (3) no less intrusive treatment will be as effective in treating the mental illness." *Steele v. Hamilton County Community Mental Health Board* (2000), 90 Ohio St.3d 176, 736 N.E.2d 10, paragraph six of the syllabus.

**{¶30}** Building upon *Steele*, appellant herein first directs us to *State v. Rowe*, 3rd Dist. Union No. 14-05-31, 2006-Ohio-1883, in which the defendant had pled not guilty by reason of insanity to attempted murder and other felonies. Mr. Rowe argued on appeal that the trial court had erred by ordering forced medications without making adequate findings in support. The Third District Court concluded: "[W]e believe that it would be the better practice to follow the procedure set forth by the Ohio Supreme Court in *Steele* in determining matters of forced medication in NGRI cases." *Rowe* at ¶ 44. Mr. Rowe's assigned error in this regard was sustained. *Id.*

**{¶31}** Appellant also directs us to *State v. Lantz*, 11th Dist. No. 2010-P-0093, 2011-Ohio-5436, 969 N.E.2d 285. The Eleventh District Court therein applied the *Steele* requirement of findings, even though it recognized that *Steele* involved a mentally ill person whose detention in a mental-health facility was pursuant to an order in a civil commitment proceeding, as opposed to a commitment order made in a criminal action after a finding of not guilty by reason of insanity. *Lantz* at ¶ 16. However, the Court added that it found "the need for proper findings is even more critical" in the circumstances before

it, "given that it is evident from the appealed judgment that the trial court did not apply the appropriate standard." *Lantz* at ¶ 20.

**{¶32}** Upon review, notwithstanding that in the present case there is no patent indication of the trial court applying an inappropriate standard to the question of forced medication, we reject the rationale of *Rowe* and *Lantz.* While we would at least initially agree with *Rowe* that specific written findings in these types of cases are the "better practice," we do not conclude that the failure to make them warrants reversal. Appellant does not provide us with any statutory language indicating the General Assembly intended to mandate formal findings in R.C. 2945.40 proceedings in the present context. Furthermore, in proceedings before the bench, a trial court judge is presumed to know the applicable law and apply it accordingly. *See Walczak v. Walczak,* Stark App.No. 2003CA00298, 2004–Ohio–3370, ¶ 22.

**{¶33}** We therefore find no reversible error in the lack of more detailed findings in the judgment entry under appeal.

**{¶34}** Appellant's Third Assignment of Error is overruled.

**{¶35}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Licking County, Ohio, is hereby affirmed.

By: Wise, J.
Gwin, P. J., and
Delaney, J., concur.

JWW/d 1101