**The STATE of Ohio, Appellee,**

**v.**

**JUNG, Appellant.**

[Cite as *State v. Jung* (1999), 132 Ohio App.3d 369.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–98–031.

Decided March 31, 1999.

*Mark E. Mulligan,* Ottawa County Prosecuting Attorney, and *Paul Skaff,* Assistant Prosecuting Attorney, for appellee.

*Michael W. Sandwisch,* for appellant.

KNEPPER, Judge.

This is an accelerated appeal from a judgment of the Ottawa County Court of Common Pleas which ordered the forced administration of antipsychotic medication to appellant, Joseph Jung. For the reasons that follow, we affirm the judgment of the trial court.

On appeal, appellant sets forth the following assignment of error:

"The Trial Court erred to the prejudice of the Defendant, and contrary to the law of Ohio, in ordering the Defendant to be forced medicated [*sic*], based upon the facts presented at hearing."

On August 19, 1992, appellant was found not guilty by reason of insanity of assaulting a police officer. The trial court subsequently found that appellant was mentally ill and ordered him to be hospitalized at Twin Valley Psychiatric Hospital ("Twin Valley") in Dayton, Ohio. Over the next six years, the trial court made six additional findings that appellant was either incompetent or mentally ill and therefore subject to hospitalization.

On April 21, 1998, Twin Valley's chief clinical officer, Victor R. Knapp, M.D., notified the trial court by letter that appellant was refusing to take his prescribed antipsychotic medication, and asked the court for a hearing to determine if appellant should be forced to take prescribed medication. Attached to Dr. Knapp's letter was a "procedures checklist" prepared by appellant's treating psychiatrist, Norma Patalinghug, M.D., who stated that appellant was unable to recognize the benefits of taking his prescribed medications. On May 8, 1998, a hearing was held. Appellant was present at the hearing and was represented by appointed counsel.

Dr. Patalinghug testified at the hearing that appellant suffers from chronic paranoid schizophrenia. She further stated that appellant's condition worsened when he began refusing his prescribed antipsychotic medication in December 1997. At the conclusion of the hearing, the trial court granted appellant's request for an independent psychiatric evaluation at the state's expense. On June 3, 1998, the trial court filed a decision in which it found that the record contained clear and convincing evidence that appellant remained "incompetent, mentally ill and subject to hospitalization after a finding of not guilty by reason of insanity." The court postponed its final decision as to appellant's medication pending the results of the independent psychiatric evaluation.

On June 24, 1998, Douglas Songer, M.D., submitted a written evaluation of appellant's mental condition to the trial court. In his report, Dr. Songer stated that he had examined appellant and, based on the examination, appellant's medical records, and the results of psychiatric tests he had administered to appellant, he agreed with Dr. Patalinghug that appellant suffers from paranoid schizophrenia. He also stated that appellant refused to take his medications, specifically Haldol, Cogentin, and lithium carbonate, because they caused him to experience significant adverse side effects. Dr. Songer stated that appellant's mental illness should be treated with antipsychotic medication; however, he stated that there are several newer medications that have fewer side effects. Dr. Songer concluded his report as follows:

"If the Court feels strongly that Mr. Jung should have medications forced on him, then strong consideration should be given to the newer oral medications first, with the use of Haldol or similar older medications intramuscularly only if he refuses oral (newer) antipsychotic medications."

On September 3, 1998, the trial court filed a judgment entry in which it ordered appellant to "cooperate with the administering of all prescribed medications," and authorized the psychiatrists at Twin Valley to "use reasonable force to administer prescribed medications in order to maintain [appellant's] competency." On September 11, 1998, appellant filed a timely notice of appeal.

Appellant asserts in his assignment of error that the trial court lacked jurisdiction because he received no personal notice that Dr. Knapp had requested authorization to forcibly medicate him, and because the trial court lacks statutory authority to force him "to take any kind of medication whatsoever."

As to the issue of notice, pursuant to R.C. 2945.401(A), any person who is found not guilty by reason of insanity and is committed to a treatment facility is subject to the continuing jurisdiction of the trial court until his commitment is terminated. The chief clinical officer of such a facility may, at any time, notify the court that he recommends a change in the conditions of the person's commitment. R.C. 2945.401(D)(1). Thereafter, pursuant to R.C. 2945.401, the court is required to notify the prosecutor and counsel for the person for whom a change in the conditions of confinement has been requested before holding a hearing.

Appellant does not dispute that his attorney was notified of Dr. Knapp's written request for the forced administration of medication. In addition, as stated above, appellant appeared at the May 8, 1998 hearing, accompanied by his appointed counsel. Accordingly, appellant received the required statutory notice.

As to the court's authority to order appellant to be forcibly medicated, appellant was committed to Twin Valley after he was found to be not guilty by reason of insanity and was subsequently determined to be mentally ill. The terms of a person's commitment under such circumstances are governed by R.C. Chapter 2945 and by R.C. Chapters 5122 and 5133 to the extent that the provisions of those chapters are not in conflict with R.C. Chapter 2945. A court's decision to grant or deny a request for a change in the conditions of the person's commitment pursuant to those statutes will not be disturbed on appeal absent a finding that the court abused its discretion. *State v. Johnson* (1987), 32 Ohio St.3d 109, 112–113, 512 N.E.2d 652, 655–657. "The term 'abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

The overriding purpose of committing mentally ill persons to a state mental health facility is to present such persons with a "reasonable opportunity to be rehabilitated," or to at least give them an opportunity to improve their mental condition. *In re Burton* (1984), 11 Ohio St.3d 147, 153, 11 OBR 465, 470, 464

N.E.2d 530, 537.[1]  It is undisputed in this case that appellant is mentally ill.  The record shows that all the psychiatrists who treated or evaluated appellant, including Dr. Songer, concluded that proper medication would help to control appellant's mental illness.

Upon consideration of the foregoing, this court finds that the trial court did not abuse its discretion by authorizing Twin Valley psychiatrists to use reasonable force to administer prescribed antipsychotic medication to appellant in this case. Accordingly, appellant's assignment of error is not well taken.  The judgment of the Ottawa County Court of Common Pleas is affirmed.  Court costs of these proceedings are assessed to appellant.

*Judgment affirmed.*

MELVIN L. RESNICK and SHERCK, JJ., concur.

---

1.  We recognize that, unlike appellant, the patient in *Burton* was ordered to be confined to a mental institution pending a determination as to whether he was competent to stand trial. However, we agree with the trial court that the reasoning articulated in *Burton* is "helpful by analogy" in this case, because a determination of incompetency to stand trial and the treatment of a mentally ill person subsequent to a finding of not guilty by reason of insanity are both governed by R.C. Chapters 2945, 5122 and 5133.  The *Burton* court found that the provisions of R.C. Chapters 2945, 5122 and 5133, taken together, provide numerous procedural safeguards that satisfy the requirements of due process.  *Burton, supra,* at 151, 11 OBR at 468–469, 464 N.E.2d at 535–536.