OPINION
{¶ 1} The defendant-appellant, Jason Rowe ("Jason"), appeals two judgments entered by the Court of Common Pleas, Union County, Ohio. We will address the assignments of error raised in each appeal in this opinion. In case number 14-05-31, he appeals the July 8, 2005 Judgment Entry revoking his conditional release and denying his motion for continuance. With respect to case number 14-05-46, he appeals the September 26, 2005 Judgment Entry forcing the administration of typical and atypical antipsychotic medications.
 {¶ 2} On September 28, 2001, Jason was arrested for the alleged crimes of attempted murder, felonious assault, and possession of criminal tools. He pled not guilty by reason of insanity and the trial court accepted his plea. The trial court then ordered Jason committed to hospitalization at the Ohio Department of Mental Health, Twin Valley Behavioral Healthcare.
 {¶ 3} On March 3, 2005, the trial court conducted a hearing to determine whether Jason qualified for conditional release. On March 25, 2005, the trial court made certain findings of fact and ordered Jason into conditional release, subject to additional terms and conditions to be followed in conjunction with a conditional release/high risk aftercare plan. Specifically, the March 25, 2005 Judgment Entry provided that
[A]ny failure of Mr. Rowe to check in, check out of thefacility, or fail to account for his where-abouts (sic) shall beimmediately reported, in not less than one hour after suchfailure event, to this Court, the Union County Sheriff, and toparents of Mr. Rowe.
Jason was sent to Diamond View Group Home for purposes of his conditional release plan.
 {¶ 4} On May 12, 2005, Jason was arrested for allegedly violating the terms of his conditional release. On May 13, 2005, a hearing was held on the trial court's own motion to determine whether any such violations occurred. The trial court had been notified that Jason had violated the terms of his conditional release by leaving Diamond View Group Homes without permission to travel outside the county. The prosecutor, public defender, and Jason were present at the hearing. Jason's counsel stated at the beginning of the hearing that Jason did not want a continuance for the hearing. Therefore, the hearing proceeded and the trial court inquired whether Jason had left Richland County without permission and gone to Union County; he admitted leaving Richland County without permission and going to Columbus in the car that he had purchased but not going to Union County.
 {¶ 5} According to statements made by Jason's residential monitor, Mr. Winger, and case manager, Ms. Ropp, Jason's condition was deteriorating rapidly, he had episodes of paranoia, and was delusional with concerns that he was reverting back to his prior condition. At the hearing, the trial court provided an explanation to Jason regarding what was going to be done. The trial court discussed how it was trying to be fair and protect everyone involved from harm and that there needed to be sufficient safeguards. At the conclusion of the hearing, the trial court ordered Jason to be placed in Twin Valley Behavior Healthcare Center for treatment pending further order of the trial court.
 {¶ 6} On that same day, May 13, 2005, a Journal Entry was filed by the trial court stating that "[T]his matter came on to be heard on May 13, 200 (sic) on the Court's own motion pursuant to Revised Code 2945.401 and 2945.402, the Court having been advised by Consolidated Care, Inc. that the defendant has violated conditions of his treatment." In conclusion, the trial court ordered that Jason "be placed in Twin Valley Behavior Healthcare Center pending further order of the Court."
 {¶ 7} On June 1, 2005, the trial court filed a Journal Entry ordering a hearing to be held on June 20, 2005 on its own motion pursuant to R.C. 2947.062. On June 17, 2005, Jason retained Mark J. Miller as his attorney. On that same day, Jason's counsel filed a motion for a continuance of the previously scheduled June 20, 2005 hearing, a motion to restore Jason to his prior conditional release status, pursuant to R.C. 2945.402(C) and a supplemental motion with law and arguments in support of Jason's continuance.
 {¶ 8} On June 20, 2005, another hearing was held on the trial court's own motion to further establish Jason's status. During the hearing, the trial court denied Jason's motions for a continuance and to restore him to his prior conditional release status. The trial court then heard testimony from Dr. Paraja Thakuri regarding Jason's condition. The Journal Entry filed July 8, 2005 regarding the June 20, 2005 hearing, provided that "it was [Dr. Thakuria's] expert testimony as the attending physician for Jason Rowe that he was a risk to himself and to others should he be released into the public and that it was necessary that he have forced medication under the circumstances, and that his conditional release should be revoked and his residence should be maintained in Twin Valley. The foregoing was the expert opinion of the witness based on her involvement with Jason Rowe both before and after his conditional release from Twin Valley." In conclusion, the trial court confirmed that Jason's conditional release was revoked and he was to be maintained in Twin Valley until further order of the Court.
 {¶ 9} On August 8, 2005, Jason filed his notice of appeal with respect to the July 8, 2005 Judgment Entry revoking his conditional release and denying his motion for continuance in case number 14-05-31.
 {¶ 10} On August 31, 2005, a notice of hearing was filed for a hearing on the motion of Twin Valley facility regarding forced medication. On September 16, 2005, Jason filed motions to transfer psychotropic medication hearing to probate court and to appoint a licensed clinical psychologist and physician.
 {¶ 11} On September 22, 2005, the trial court held the hearing. Twin Valley requested that Jason be transferred to the maximum security section of the facility and be forced medications and treatments against his consent. During the hearing, the trial court denied Jason's motion and ordered forced medications based on the testimony of Dr. Fettman. Dr. Fettman established that he was the Director of Forensic Medical Services at Twin Valley Behavioral Healthcare and had filed an application on behalf of his facility for the purpose of requesting the ability to forcibly medicate Jason which was signed by the chief clinical officer of the facility. He testified with respect to Jason's unwillingness to take the medications and his "assaultive, hostile, paranoid, negative, vituperative, and unpleasant" behaviors. Dr. Fettmann stated that he had listed the medications on the application and on cross-examination discussed the side effects of the medications. He requested that Jason also be placed in a maximum security portion of the facility for Jason's safety and the safety of others.
 {¶ 12} The trial court found "by clear and convincing evidence to a satisfactory degree of medical certainty it is necessary that physicians in the care of Jason Rowe at Twin Valley Behavioral Healthcare have the authority to force the administration of typical and atypical antipsychotic medications" and for Jason to "be placed in the maximum security facility at Twin Valley Behavioral Healthcare." Sept. 26, 2005 Judgment Entry.
 {¶ 13} On September 23, 2005, Jason filed a motion for reconsideration and motion to stay order authorizing forced medication until there had been an independent evaluation. On September 26, 2005, the trial court filed a Journal Entry overruling Jason's motions.
 {¶ 14} On October 26, 2005, Jason filed his notice of appeal with respect to the September 26, 2005 Judgment Entry forcing the administration of typical and atypical antipsychotic medications in case number 14-05-46.
 CASE NUMBER 14-05-31 Regarding the July 8, 2005 Judgment Entry {¶ 15} Pursuant to the August 8, 2005 notice of appeal, regarding the July 8, 2005 Judgment Entry revoking Jason's conditional release and denying his motion for continuance in case number 14-05-31, the following three assignments of error were alleged:
 Assignment of Error 1 THE TRIAL COURT ERRED AS A MATTER OF LAW AND VIOLATED THEAPPELLANT'S DUE PROCESS RIGHTS BY FAILING TO RESTORE THEAPPELLANT TO HIS PRIOR CONDITIONAL RELEASE STATUS, WHEN THE TRIALCOURT FAILED TO DETERMINE THE DISPOSITION OF APPELLANT'SCONDITIONAL RELEASE WITHIN THE PROSCRIBED STATUTORY TIME AS SETFORTH IN OHIO REVISED CODE SECTION 2945.402(C).
 Assignment of Error 2 THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FORCONTINUANCE.
 Assignment of Error 3 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHENIT CONSIDERED THE TESTIMONY AND OPINIONS OF DR. PARAJA THAKURIA,AS HER OPINIONS WERE NOT STATED TO A REASONABLE DEGREE OF MEDICALPROBABILITY OR CERTAINTY.
 {¶ 16} In Jason's first assignment of error with respect to case number 14-05-31, he alleges that the trial court erred as a matter of law and violated Jason's due process rights by failing to determine the disposition of his conditional release within the statutory time period set forth in R.C. 2945.402(C). Therefore, Jason argues that the trial court was required to restore him to his prior conditional release status because the trial court failed to timely determine his disposition of his conditional release.
 {¶ 17} R.C. 2945.402 provides:
(C) A person, agency, or facility that is assigned to monitora defendant or person on conditional release immediately shallnotify the trial court on learning that the defendant or personbeing monitored has violated the terms of the conditionalrelease. Upon learning of any violation of the terms of theconditional release, the trial court may issue a temporary orderof detention or, if necessary, an arrest warrant for thedefendant or person. Within ten court days after the defendant'sor person's detention or arrest, the trial court shall conduct ahearing to determine whether the conditional release should bemodified or terminated. At the hearing, the defendant or personshall have the same rights as are described in division (C) ofsection 2945.40 of the Revised Code. The trial court may order acontinuance of the ten-court-day period for no longer than tendays for good cause shown or for any period on motion of thedefendant or person. If the trial court fails to conduct thehearing within the ten-court-day period and does not order acontinuance in accordance with this division, the defendant orperson shall be restored to the prior conditional releasestatus.
 {¶ 18} A trial court's decision regarding the termination or modification of conditional release will not be disturbed absent an abuse of discretion. State v. Johnson (1987),32 Ohio St.3d 109, 113. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 19} Upon review of the record and the referenced facts above, it is our determination that the trial court did not abuse its discretion. Specifically, Jason was arrested for violating the terms of his conditional release on May 12, 2005 and a hearing was conducted on May 13, 2005. The hearing was held within the statutorily designated period of ten-court-days because it was initiated the following day. Though the trial court did not explicitly state at that time that the conditional release was revoked, the trial court did order that Jason be placed back in Twin Valley Behavior Healthcare Center until further order by the trial court; thus, clearly indicating that the conditional release was revoked at that time. On June 20, 2005, a continuation of the requisite hearing was conducted at which time the trial court explicitly confirmed that Jason's conditional release was revoked.
 {¶ 20} Under these circumstances, we cannot find that the trial court abused its discretion. In sum, it is our determination that the trial court substantially complied with R.C. 2945.402(C) by commencing the hearing process and the final determination within the designated time period of ten-court-days. Accordingly, the first assignment of error is overruled.
 {¶ 21} Jason asserts in his second assignment of error in case number 14-05-31 that the trial court erred in denying his motion for continuance.
 {¶ 22} The decision whether to grant or deny a continuance lies within the broad discretion of the trial court. State v.Jones (2001), 91 Ohio St.3d 335, 342, citing State v. Unger
(1981), 67 Ohio St.2d 65, 67. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion. Id. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219; State v.Adams (1980), 62 Ohio St.2d 151, 157-58, 404 N.E.2d 144, 149.
 {¶ 23} The standard of review relative to a decision on a motion for continuance is stated in Burton v. Burton (1999),132 Ohio App.3d 473, 725 N.E.2d 359 citing State v. Unger
(1981), 67 Ohio St.2d 65, 423 N.E.2d 1078. In Burton, we stated:
The review of a decision on a motion for continuance requiresthe appellate court to apply a balancing test, weighing the trialcourt's interest in controlling its own docket, includingfacilitating the efficient dispensation of justice, versus thepotential prejudice to the moving party. There are objectivefactors that a court must consider in determining whether togrant a continuance. These factors include the length of thedelay requested; whether previous continuances have been granted;the inconvenience to the parties, witnesses, attorneys and thecourt; whether the request is reasonable or purposeful andcontrived to merely delay the proceedings; and whether the movantcontributed to the circumstances giving rise to the request.[State v.] Unger [(1981),] 67 Ohio St.2d [65,] 67-68,21 O.O.3d at 42-44, 423 N.E.2d 1078.
 Burton, 132 Ohio App.3d at 476.
 {¶ 24} In the case at hand, Jason retained counsel on June 17, 2005, just a few days prior to the scheduled hearing of June 20, 2005. Jason's newly appointed counsel filed a motion for continuance on June 17, 2005 requesting that he be granted more time to prepare and investigate the case. The motion for continuance was denied as being untimely filed. On June 20, 2005, the hearing continued as scheduled. On July 8, 2005, the trial court filed its Judgment Entry regarding the hearing on June 20, 2005 and established that the continuance of the hearing was denied.
 {¶ 25} We cannot find that the trial court abused its discretion when it denied Jason's request for a continuance. The trial court denied the request because it was untimely filed as being only three days prior to the hearing. In applying a balancing test, weighing the trial court's interest in controlling its own docket versus the potential prejudice to the moving party, it could be deemed that the length of the delay, the inconvenience to the parties, witnesses, attorneys and the court, and the fact that Jason contributed to the circumstances by waiting to retain counsel, provide that the trial court's interest outweighs the potential prejudice to the moving party. See Burton, supra. Accordingly, Jason's second assignment of error is overruled.
 {¶ 26} In the third assignment of error of case number 14-05-31, Jason claims that the trial court erred when it considered the testimony and opinions of Dr. Paraja Thakuria because her opinions were not stated to a reasonable degree of medical probability or certainty.
 {¶ 27} The trial court has sound discretion to determine an expert witness' qualifications to testify on a particular subject. State v. Jones (2000), 90 Ohio St.3d 403, 414,739 N.E.2d 300, citing State v. Awkal (1996), 76 Ohio St.3d 324,331, 667 N.E.2d 960. Therefore, any decision concerning the admission or exclusion of expert testimony will not be disturbed absent an abuse of discretion. Jones, supra, citing State v.Bidinost (1994), 71 Ohio St.3d 449, 453, 644 N.E.2d 318.
 {¶ 28} Expert testimony must meet the criteria of Evid.R. 702, which provides that a witness may testify as an expert if: (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons * * *; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training or education regarding the subject matter of the testimony; (C) The witness' testimony is based on reliable scientific, technical or other specialized information. Evid.R. 702, see also State v. Hartman (2001),93 Ohio St.3d 274, 283-84, 754 N.E.2d 1150.
 {¶ 29} In this case, we find that the first prong of the rule was satisfied, because Dr. Thakuria's testimony was necessary to determine Jason's current psychiatric condition. Also, the second prong of the test was satisfied, since the testimony provided by Dr. Thakuria revealed that she has been a psychiatrist and attending physician for twenty years. She completed undergraduate coursework and medical college in India, then did her residency at Ohio State University and Iowa University. In addition, she has been admitted into the practice in Ohio for twenty years. Therefore, Dr. Thakuria's testimony demonstrated that she had specialized knowledge, skill, experience, training and education in the specialization of psychiatry. Moreover, we find that the second prong of Evid.R. 702 was satisfied because Jason never specifically challenged or objected to Dr. Thakuria's expert qualifications at the hearing. As for the third prong, Dr. Thakuria's testimony was based on other specialized information. In particular, she had sufficient knowledge regarding the various treatments that Jason had tried, his varying conditions over the two years she had been treating him and stated that upon a probable degree of medical certainty of psychiatric certainty that Jason was not a candidate for conditional release. Therefore, the record reflects that Dr. Thakuria was qualified to give her opinion as to the psychiatric condition of Jason.
 {¶ 30} In addition, as to whether or not her opinions were stated to a reasonable degree of medical probability or certainty, Dr. Thakuria testified when asked by the court,
"Based upon a probable degree of medical certain — of psychiatric certainty, is he a candidate for release today?" that "I — I cannot believe that he's going to stay stable in outside at this point." Based on the totality of the expert testimony, including the fact that there was no objection to the specific question posed by the trial court set forth above, we find the expert opinion was sufficient to establish that Jason is not a candidate for conditional release, to the requisite degree of medical and psychiatric certainty.
 {¶ 31} In conclusion, the trial court did not abuse it discretion in determining that Dr. Thakuria was a qualified expert on the psychiatric condition of Jason or that the testimony was stated to a reasonable degree of medical and psychiatric certainty. Thus, the third assignment of error is overruled.
 {¶ 32} Accordingly, Jason's three assignments of error in case number 14-05-31 are overruled. Therefore, the July 8, 2005 Judgment Entry entered in the Court of Common Pleas, Union County, Ohio is affirmed.
 CASE NUMBER 14-05-46 Regarding the September 26, 2005 Judgment Entry {¶ 33} Pursuant to the October 26, 2005 notice of appeal, addressing the September 26, 2005 Judgment Entry with respect to the forcing of the administration of typical and atypical antipsychotic medications in case number 14-05-46, the following two assignments of error were alleged:
 Assignment of Error 1 THE TRIAL COURT ERRED AND VIOLATED THE APPELLANT'S FOURTEENTHAMENDMENT PROCEDURAL DUE PROCESS RIGHTS IN FAILING TO APPOINT ANINDEPENDENT PSYCHOLOGIST PRIOR TO ORDERING FORCED MEDICATIONSUPON APPELLANT.
 Assignment of Error 2 THE TRIAL COURT ERRED AS A MATTER OF LAW AND VIOLATED THEAPPELLANT'S SUBSTANTIVE DUE PROCESS RIGHTS BY ORDERING FORCEDMEDICATION WITHOUT MAKING REQUIRED FINDINGS.
 {¶ 34} In Jason's first assignment of error in case number 14-05-46, he claims that the trial court erred in failing to appoint an independent psychologist prior to ordering forced medications upon him and violated his Fourteenth Amendment procedural due process rights.
 {¶ 35} Pursuant to R.C. 2945.401(A), any person who is found not guilty by reason of insanity and is committed to a treatment facility is subject to the continuing jurisdiction of the trial court until his commitment is terminated. R.C. 2945.40(C) provides
If a person is found not guilty by reason of insanity, theperson has the right to attend all hearings conducted pursuant tosections 2945.37 to 2945.402 of the Revised Code. At anyhearing conducted pursuant to one of those sections, the courtshall inform the person that the person has all of the followingrights:
 (1) The right to be represented by counsel * * *;
 (2) The right to have independent expert evaluation and tohave that independent expert evaluation provided at publicexpense if the person is indigent; * * *. (Emphasis added.)
 {¶ 36} R.C. 2945.401(D) establishes that the chief clinical officer at a treatment facility may, at any time, notify the court that he recommends a change in the conditions of the person's commitment. A change in the conditions of the person's commitment includes a request for an order to forcibly medicate the person. State v. Jung (1999), 132 Ohio App.3d 369,724 N.E.2d 1262.
 {¶ 37} The Ohio Supreme Court stated in Steele v. HamiltonCounty Community Mental Health Board (2000), 90 Ohio St.3d 176,189, 736 N.E.2d 10,
[t]hat when a treating physician claims that the state'sparens patriae power permits forced medication, suchdetermination is a uniquely judicial function. Accordingly, ifthe patient is not represented by an attorney, then an attorneymust be appointed to represent the patient; an independent"psychiatrist or a licensed clinical psychologist and a licensedphysician" must be appointed to examine the patient, to evaluatethe recommended treatment, and to report such findings andconclusions to the court regarding the patient's capacity to giveor withhold informed consent as well as the appropriateness ofthe proposed treatment; and the patient, his/her attorney, andtreating physicians must receive notice of all hearings and thepatient must be provided the opportunity to be present at allhearings and to present and cross-examine witnesses. (Emphasisadded.)
 {¶ 38} However, in State v. Barker, 2nd Dist. No. 20417,2005-Ohio-298, the Second District Court of Appeals held that a defendant did not have a statutory right to an independent psychiatric or psychological examination in order to determine whether the involuntary administration of drugs was warranted. The court distinguished this case from Steele based on the status and situation of the individuals; in Steele the person was a civilly committed individual and in Barker the individual was a mentally ill criminal defendant who was refusing to take medication to restore him to the standard of competent to stand trial pursuant to R.C. 2945.38. Barker, 2005-Ohio-298, at ¶ 16. Furthermore, Barker stated that the Steele case involved R.C.5122.11 and the situation in which a hospital wants to force medications on a patient because the patient lacked the ability to consent and is a danger to himself or others. Id. at ¶ 12.
 {¶ 39} In this case, Jason filed a motion to have a licensed expert appointed to do an independent evaluation. However, the trial court denied the motion. Following the hearing, Jason filed a motion for reconsideration and to stay the order until an independent evaluation had been conducted; however, the trial court overruled the motions.
 {¶ 40} Upon review of the foregoing statutory and case authorities, it is our conclusion that Jason was improperly denied access to an independent expert evaluation. This conclusion is based on our reading of R.C. 2945.40(C) and theSteele decision. Specifically, we believe this case like theSteele case is distinguishable from Barker because the facility in Barker was requesting forced medications for an individual being confined to restore competency to stand trial rather than because the individual was a danger to himself or others while confined pursuant to an NGRI determination. Moreover, while R.C. 2945.40(C) may or may not be expressly directed to the precise situation before us, we believe the protections of this statute: (1) provide the soundest approach and direction for the better practice in the situation before us; (2) are particularly consistent with the language and principles of the Steele decision; and (3) in the absence of more specific authority to the contrary should be followed in this case. Accordingly, the first assignment of error regarding case number 14-05-46 is sustained.
 {¶ 41} Jason further asserts in his second assignment of error in case number 14-05-46 that the trial court erred as a matter of law and violated his substantive due process rights by ordering forced medications without making the required findings.
 {¶ 42} The Ohio Revised Code does not provide special powers for the state to force medication onto a patient who is committed pursuant to a not guilty by reason of insanity plea. However, the Ohio Supreme Court has established in Steele that
[a] court may issue an order permitting hospital employees toadminister antipsychotic drugs against the wishes of aninvoluntarily committed mentally ill person if it finds, by clearand convincing evidence, that: (1) the patient does not have thecapacity to give or withhold informed consent regarding his/hertreatment; (2) it is in the patient's best interest to take themedication, i.e., the benefits of the medication outweigh theside effects; and (3) no less intrusive treatment will be aseffective in treating the mental illness.
 Steele, 90 Ohio St.3d at 187-88.
 {¶ 43} In Jung, the Sixth District Court of Appeals stated that absent an abuse of discretion, a court's decision to grant or deny a request for a change in the conditions of the person's commitment pursuant to R.C. 2945 would not be disturbed on appeal. Jung, 132 Ohio App.3d 369, 372, 724 N.E.2d 1262, citingState v. Johnson (1987), 32 Ohio St.3d 109, 112-13,512 N.E.2d 652. The Court of Appeals held that the trial court had authority to order a person to be forcibly medicated if the person was found to be not guilty by reason of insanity and was subsequently determined to be mentally ill. Jung, 132 Ohio App.3d 369.
 {¶ 44} Notwithstanding the Jung decision, once again we believe that it would be the better practice to follow the procedure set forth by the Ohio Supreme Court in Steele in determining matters of forced medication in NGRI cases. It is our opinion that the line of questioning posed at the September 22, 2005 hearing indicates that the parties and the trial court were operating within the Steele framework. However, to the extent that the trial court may not have completed the Steele
findings, this assignment of error will also be sustained.
 {¶ 45} In sum, the assignments of error in case number 14-05-31 are overruled and the July 8, 2005 Judgment Entry revoking his conditional release and denying his motion for continuance is affirmed.
 {¶ 46} However in case number 14-05-46, the assignments of error are sustained and the September 29, 2005 Judgment Entry regarding forced medication is vacated and the matter is remanded for appointment of independent psychologist and a new hearing on the issue of forced medications in accordance with this opinion.
Judgment in case number 14-05-31 affirmed.
 Judgment in case number 14-05-46 vacated and remanded.
 Bryant, P.J., and Rogers, J., concur.